### WILDER v. CONTINENTAL CASUALTY CO.*

(Circuit Court of Appeals, Fifth Circuit. January 22, 1907.)

#### No. 1,595.

**INSURANCE—ACTION ON ACCIDENT POLICY—QUESTION FOR JURY.**

  In an action on an accident policy to recover for the death of the insured, who was a railroad employé, the evidence showed that the application was filled out by defendant's agent after talking for an hour with the applicant as to the duties of his occupation, in which defendant's

---

\* Rehearing denied February 19, 1907.

manual giving classification of risks was referred to, and that his occupation was put down as "Superintendent Inspection." There was no position in the service of the railroad company having that name, nor was there any class by that name given in defendant's manual, but there was one covering inspectors of ties and timber in which the policy was limited to a smaller amount than that in suit. It was further shown that the duties of the insured consisted in making inspection of ties and timbers and in superintending inspections made by others, and defendant's agent testified that insured stated at the time of the application that he had both office and traveling duties, but did not personally make inspections. *Held,* that it could not be said as matter of law from such evidence that the occupation of the insured was not substantially that described in the application, but that such question was one for the jury.

In Error to the Circuit Court of the United States for the Southern District of Texas.

John W. Parker, for plaintiff in error.

Jas. A. Baker, Edwin B. Parker, H. M. Garwood, and C. R. Wharton, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

McCORMICK, Circuit Judge. This was an action on an accident insurance policy by Annie E. Wilder, the plaintiff in error, widow of C. H. Wilder, the insured, to recover death indemnity of $5,000 against Continental Casualty Company, the defendant in error. The record shows that C. P. Kennedy was employed as a solicitor of insurance for the defendant; that he had known Wilder four or five months prior to taking his application, had made inquiry as to who Wilder was before talking with him, and had been told who he was; that this inquiry was made with the view of getting Wilder's application for insurance; and that at the time he got his application he and Wilder discussed his duties and the different amounts of indemnities for more than an hour. He had the defendant's manual of December 1, 1903, in force at the time, of instructions to agents, and went over it with the applicant and showed him the different classifications of risks. This manual was a small booklet containing 46 pages, and the classification of railroad risks or occupations was elaborately arranged therein, embracing about 450 different occupations of persons in railroad employment. It instructed the agents that "accurate and well-defined classifications are absolutely requisite. Classifications and limitations as laid down in this manual must be strictly adhered to. In giving occupations, classify upon the duty to be performed, not upon the name. The same title may have different meanings upon different railroads." The application was made on a stereotyped form. The heading of the application in this case was:

"Form N. C.                                             Agent's No. ———.
"Answer all questions and write plainly in ink.  Policy No. 634338 ———.
Class Pref ———.  Application for Insurance ———.  Mr. C. P. Kennedy, Agent."

It embodied numerous questions with blank spaces for the answers. All the writing on the application, except the signature of the applicant, was written by the defendant's soliciting agent. He testified:

"This application is in my handwriting; that is, the blanks were filled in by me exactly as Mr. Wilder dictated the answers."

Among the questions is one (No. 4): "Occupation (if more than one, name all of them)." For answer to this question, the space left blank in the application in which to write the occupation of the applicant was on a line 3¾ inches long and was filled by the two words, "Superintendent-Inspection."

On December 14, 1904, Wilder boarded a local freight train on the Houston, East & West Texas Railway, and remained in the caboose until the train stopped at Corrigan. When the train stopped, the caboose was a short distance from the depot. Wilder, with two others, left it and started to walk to the depot. When witnesses saw him last, he was walking beside the track in the rear of the other two. While thus engaged in walking from the caboose to the depot he was run over by a car, and so injured that he died therefrom in a few hours.

The plaintiff herself testified that C. H. Wilder, from the time he made his application for insurance and received the policy to the time of his death, was in the employ of the Houston, East & West Texas Railway Company, and that his duties consisted of traveling up and down that railway inspecting ties and material and supervising such inspection when it was done by others; that he frequently employed men to assist him in such work and kept an account of their time and supervised their work. The witness C. C. Johnson, called for the plaintiff, testified that he had known Wilder for many years and knew his occupation and duties, and that he (Wilder) was "what you might call a superintendent of inspection." He inspected ties and timber himself and also employed men to assist him in inspecting them. On some occasion he had accepted ties for his company on the inspection of men employed by him, without reinspecting them himself. He generally did the inspecting himself. Two other witnesses called by the plaintiff testified practically to the same effect. R. S. Stephens testified for the defendant that Wilder, at the time of his death and for several years prior thereto, was tie and timber inspector for the railway company; that it was Wilder's duty to travel over the road and stop at various places along the road and inspect ties and timber delivered to the railroad company for purchase before they were inspected. He had authority to employ others when he needed them, and to direct the labor of such assistance as he might employ. The company, however, looked to him to do the inspection himself, and held him responsible for the work of inspection. He never held the position of superintendent of inspection as there was no such position as that in the Houston, East & West Texas Railway service. The witness Kennedy's testimony shows that, when he received Wilder's application, he had been informed and knew that Wilder would go out in the woods or along the track and look at the ties himself.

Apparently, but not expressly, abandoning other issues made by its pleadings, the defendant concentrated its contention on this provision of the policy:

"Nonforfeitable Provision. In the event of the insured changing his occupation to one classified by the company as more hazardous, or being injured while engaged for profit or otherwise in any act pertaining to any calling, occupation or exposure (not specially excepted) classified by the company as more hazardous than the occupation herein given, this insurance shall not be forfeited and voided, but he or his beneficiary shall be entitled to recover the

benefit which his payments would have purchased in such more hazardous class, not exceeding the maximum paid in such class, as shown by the company's Manual and Classification of Risks in force at the time of the accident."

G. W. Donaldson, manager for the defendant company in Texas, testified for the defendant: That an inspector of ties and timber was classified on page 23 of its manual as "ordinary," the limit of the risk being $2,500 and a weekly indemnity of $15, and that, if Mr. Wilder was an inspector of ties and timber, the officers of the company had no authority to issue him a policy for more than $2,500, and if his duties had been so stated his policy would have read for that amount. That the first information "we [the officers of the company] ever had that he was in fact an inspector of ties and timber was when the plaintiff herein forwarded us the proof of death in December, 1904, in which it was stated that the occupation of the deceased, at the time of the injury, was a tie and timber inspector. Our policy issued to Mr. Wilder contained a nonforfeitable clause. I therefore sent Mrs. Wilder a draft for $2,500, and when I ascertained that a misstatement had been made as to his occupation, and that he was in fact an inspector of ties and timber at the time the policy was written, and had continuously performed that service since, I returned her the $4.75 premium, or the difference between $26.75, which would have been the premium upon the policy of $2,500 for the policy of inspector of ties and timber, and the $31.25 which would have been the premium charged for a $5,000 policy for a superintendent of inspection."

When all the evidence in the case and the argument of counsel had been heard, the court, at the request of counsel for the defendant, instructed the jury:

"That under the evidence the plaintiff's recovery should be limited to the sum of $2,500 on the policy, plus $4.53 return premium. You will, therefore, return a verdict for the plaintiff in this case for $2,504.53."

In conformity to which peremptory instructions, the jury returned their verdict and the court entered judgment. This action of the court was excepted to and is assigned as error, and we think the assignment is well taken.

The record shows that in the manual (instructions to agents) there was no such classification as "superintendent of inspection" or "inspection superintendent." The witness Kennedy says:

"We [that is, the witness and Wilder] sat down and talked over the matter for more than an hour. I had the manual and went over it with him, and showed him the different classifications of risk. First, however, I asked him what his employment was, and what were the duties connected with his employment. He said that he was a superintendent of inspection, with office and traveling duties, but did not do the actual work of inspection. I turned to page 23 of the manual, and showed him how we classified an inspector of ties and timber."

The parts of the manual set out in the bill of exceptions does not embrace page 23, but the testimony of the witnesses Kennedy and Donaldson is clear as to its material contents. "Page 28 is embraced, showing a list of all superintendents classified." This list embraces 12 specifications of different kinds of superintendents and assistants, but does not show anything in reference to a superintendent of inspection of

ties and timber. The evidence certainly tends to show that the soliciting agent obtained from the applicant accurate information as to his actual employment, and that the answer written by the solicitor to the question as to the occupation of the applicant, namely, "Superintendent Inspection," represents the conclusion or judgment of the solicitor as to what the proper classification of the applicant was under the instructions of the company which he was trying to follow.

As we understand the record, it is not insisted that any fraudulent misrepresentation was made by the applicant, or any substantial misrepresentation at all. There is no suggestion that from the date of the policy, April 28, 1904, to the date of the death, December 14, 1904, there had been any change in the occupation of the applicant. Speaking strictly, he was not engaged in any work at the time he was killed, and there is no proof tending to show that if he had, in point of fact, been "a superintendent of inspection, with office and traveling duties, but did not do the actual work of inspection," he might not, in the discharge of his traveling duties, have made the trip on the freight train on which he did ride, and have left the caboose at the time and place he did and have undertaken to walk therefrom to the depot as he did, conversing with his companions on the way, until, for some reason which they cannot explain, he stepped on the track and was run over by a car making a flying switch. If it can be held that the written evidence and other undisputed testimony presents such a case as leaves for decision only a question of law as to the extent of the defendant's liability, the inclination of our judgment would be different from that of the trial judge.

The writer of this opinion fully concurs in the language used by Judge Caldwell in announcing the decision of the United States Circuit Court of Appeals in the case of New York Life Insurance Company v. Russell, to be found in 77 Fed. on pages 103 and 104, 23 C. C. A. 52:

"The courts long ago decided that the agents of insurance companies authorized to solicit and receive applications for insurance, and to forward them to the companies for acceptance, must be deemed the agents of the insurance companies in all they do in preparing the applications, and in any representations they make to the insured as to the character and effect of the statements therein contained, and that the companies would be held to a knowledge of all statements, representations and information given by the insured, when making the application, to the agent, respecting the subject-matter of the insurance. In a word, the courts applied to the relation between the insurance companies and their agents the well-settled rule of agency that all acts performed and all knowledge acquired by an agent in the conduct of the business of his agency are the acts and knowledge of the principal. After this doctrine had been established, the insurance companies, in order to evade it and escape liability for the acts and knowledge of their agents in the due prosecution of the business of their agencies, inserted in their applications and policies a provision to the effect that the persons soliciting or taking the application should be deemed the agent of the insured, and not of the insurer. This effort of the insurance companies to avail themselves of all the benefits of carrying on their business in the only way it could be carried on, through agents, and at the same time escape all the obligations and liabilities that attach to a principal who commits the conduct of his business to an agent, proved unavailing. The courts held that an insurance company could not convert its agent into an agent for the insured by merely calling him such in the application or policy."

While the policy in the case before us may not in terms attempt to convert the defendant's agent, Kennedy, into an agent for the insured by merely calling him such in the application or policy, the testimony of the defendant's manager, that "the first information we ever had that he (Wilder) was in fact an inspector of ties and timber was when the plaintiff herein forwarded us the proof of death," etc., assumes that the company was not chargeable with the full and accurate information which the proof tends to show had been given by Wilder to Kennedy.

However this may be, it seems to us that the proof does not show beyond question that the deceased was, at the time of receiving his injury, engaged in an occupation not substantially described in his application, or so materially different as to require the limiting of the recovery on the policy to the sum specified in the peremptory charge.

It follows that the judgment of the Circuit Court must be reversed, and the case remanded to that court, with directions to award the plaintiff a new trial, on which that issue should be submitted to the jury under proper instructions; and it is so ordered.