# CHARLESTON.

PARKER v. NORTH AMERICAN ACCIDENT INS. CO.

Submitted February 6, 1917.   Decided February 13, 1917.

1. INSURANCE—*Accident Insurance—Classification—Estoppel.*

    An accident insurance company is estopped to deny that a party insured by it was placed in the wrong classification, when such classification was made by its agent upon full and truthful information given such agent as to the employment and occupation of the assured.   (p. 580).

2. SAME—*Accident Insurance—Amount of Indemnity—Reduction.*

    An accident insurance company will not be permitted to reduce the amount of indemnity provided to be paid by the terms of an accident insurance policy by reason of a provision in such policy that in the event of the death, injury or disability of the insured while engaged temporarily or otherwise in any calling or occupation deemed more hazardous than the classification to which the insured is assigned in the policy, the insured or beneficiary shall be entitled to recover only the indemnity which the premiums paid would have purchased in the more hazardous class as shown by the company's manual, when it is shown that the classification of the insured contained in the policy was made by the company's agent after a full and truthful statement of the employment and occupation of insured, and the injury for which indemnity is claimed was sustained while insured was engaged in the occupation of which the company's agent had full information at the time he made such classification, although the occupation in which insured was engaged at the time of the accident was, by the terms of the company's manual, more hazadous than that under which he was classified in the policy of insurance.   (p. 580).

3. SAME—*Accident Insurance—Indemnity—Class—Estoppel.*

An accident insurance company will not be permitted to reduce the amount of indemnity provided to be paid by the terms of a policy of insurance by reason of a provision in such policy that in the event of an injury from unnecessary exposure to apparent danger the limit of the company's liability shall be one-fifth of the amount that would otherwise be payable, when it is shown that the company's agent, after full and truthful information given him as to the insured's employment and occupation, placed the insured in the classification shown by the policy, and the injury for which indemnity is claimed was sustained while insured was engaged in the occupation given such agent. In such case the company is estopped to say that insured was unnecessarily exposing himself to apparent danger by engaging in his occupation as given to the agent at the time the insurance was applied for. (p. 580).

4. SAME—*Accident Insurance—''Visible Marks on the Exterior of the Body.''*

Ordinarily in case of an immediately fatal accident, the difference in the appearance of insured just before the accident and of his dead body immediately thereafter is a sufficient visible mark upon the body of the insured to prevent the reduction of the indemnity provided in the policy under a provision therein contained that in case of injuries, fatal or otherwise, of which there shall be no visible marks on the exterior of the body, the limit of the company's liability shall be one-fifth of the amount that would otherwise be payable under the policy. (p. 584).

Error to Circuit Court, Ohio County.

Action by J. N. J. Parker against the North American Accident Insurance Company. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Erskine, Palmer & Curl,* for plaintiff in error.

*McCamic & Clarke,* for defendant in error.

RITZ, JUDGE:

William H. Parker, plaintiff's son, was a student in the Wheeling high school. He was captain of the football team, and a member of the baseball team of said high school, and was very much interested in amateur athletics. In the month of June, 1915, his father, plaintiff here, decided that he would

procure accident insurance for the benefit of his son, fearing injury as the result of his engaging in the above-mentioned pursuits. He applied to the agent of the defendant company for this purpose. An application was filled out at that time. Plaintiff stated to the agent that his boy was a high school student; that he was captain of the football team, and was a member of the baseball team, and very much interested in athletics; and that he desired accident insurance for him on this account. Defendant's agent informed the plaintiff that a student's time was of no value, and asked him if he was engaged in anything else. Plaintiff then informed the agent that in addition to his work as a high school student he helped the plaintiff in his store in the mornings before school; and that two or three evenings after school of each week he went around in the near-by towns and solicited orders for the plaintiff; and that during vacations of the school he was regularly employed in soliciting orders and working for the plaintiff in his business. These representations of the occupation or occupations of the plaintiff's son were truthful, and upon the same the defedant company's agent classified him as "travelling salesman, by rail, selling to dealers, not peddler." The policy of insurance sued on in this case was issued upon this application. The monthly premiums were regularly paid thereon by the plaintiff. On the 20th of November, 1915, the insured, while engaged with his team in a football game at Buckhannon, West Virginia, and making a play peculiar to that game, brought his head in contact with the knee of a player on the opposing team with such force that he was rendered unconscious from the blow and died in forty minutes. Application was made to the defendant company for the indemnity provided by the policy in case of the accidental death of the insured, to-wit, for the sum of six hundred dollars. The defendant company refused to pay the indemnity provided and this suit was brought to recover the same. The defendant company's refusal is based upon three grounds: First, that the assured is improperly classified in the policy as a travelling salesman, and that because of the following provision in the policy the beneficiary would only be entitled to receive such sum as the premium paid would

have purchased in the more hazardous occupation in which the assured was engaged at the time of his death. The provision of the policy relied upon is as follows: ''In the event of the death, injury or disability of the Insured, as herein provided, while engaged temporarily or otherwise, in any act, calling, occupation, risk or exposure classified as more hazardous than the classification herein given, this insurance shall not be forfeited nor voided, but Insured or beneficiary shall be entitled to recover that indemnity which premiums paid herefor would have purchased in the more hazardous class, as shown by the Company's manual and classification of risks in force at the time of the accident or beginning of illness.'' Defendant asserts that assured should have been classified as an amateur football player, and that the premiums paid by him would have purchased a policy of insurance providing for an indemnity of fifty dollars in case of accidental death. Second, defendant claims that by reason of a provision in the policy that in the event of injury, fatal or non-fatal, from unnecessary exposure to apparent danger, the limit of the company's liability, shall be only one-fifth of the amount that would otherwise be payable under the policy, and that because of the fact that he would be entitled to only fifty dollars if properly classified; and engaging in a football game being an unnecessary exposure to apparent danger, the limit of the company's liability would be ten dollars, or one-fifth of the amount which he would be entitled to receive under the classification to which defendant claims he belonged. Third, defendant claims that because of a provision in the policy that in the event of injury, fatal or otherwise, of which there shall be no visible marks on the exterior of the body, the limit of the company's liability would be one-fifth of the amount that would otherwise be payable, and that there were no visible marks upon the body of the insured. Therefore it contends that its liability is only one-fifth of the amount which he would have been entitled to receive had he been properly classified, to-wit, ten dollars. This sum of ten dollars it offered to pay, but the same was refused. The trial of the action in the Circuit Court resulted in a verdict and judgment in favor of the plaintiff for the full amount of the

indemnity provided in the policy, to-wit, the sum of six hundred dollars, and this writ of error is prosecuted to reverse that judgment.

The first inquiry is, is the provision of the policy limiting the assured's recovery of an indemnity, the amount of which could be purchased by the premiums paid by him in the occupation in which he was engaged at the time of his death, applicable under the facts in this case, and does it prevent recovery for more than fifty dollars as contended by the defendant? The plaintiff insists that in as much as he correctly and truthfully informed the defendant company's agent as to the employments and occupations of his son, and the defendant company's agent made the classification upon this information, the defendant is now estopped to say that the assured was at the time of his death engaged in a more hazardous occupation than that mentioned in the policy. It may be considered as established in this case that the defendant company's agent was fully and truthfully informed as to the occupations and employments of the assured, and that he knew that the assured was engaged, and would continue to be engaged in amateur athletics, including playing football, and that it was for the purpose of guarding against injuries likely to arise from this occupation that the accident insurance was desired, and that after this full knowledge of the assured's employment and occupation the defendant company's agent made the classification stated in the application and in the policy. In the conduct of the business of accident insurance it appears that different premiums are charged, depending upon the risk of injury or accident to the assured, and the material thing for the insurance company is to fix for itself the correct premium applicable to the particular risk against which it proposes to indemnify the assured. These rates and classifications are peculiarly within the knowledge of the company. The assured can do no more than to truthfully represent his employments and occupations, and when he does this the company writing the insurance applies to it the appropriate classification and rate.

In 1 Corpus Juris, at p. 436, it is stated: ''Where the applicant makes a true and full statement of his occupation to the

insurer's agent the company is bound, after loss, by the classification given him by the agent.''

The case of *Schwarzbach* v. *Protective Union*, 25 W. Va. 622, is authority for the proposition that where the agent of a life insurance company knows the truth in regard to the state of the applicant's health the policy will not be forfeited because of an untrue statement in an application, which application was made out by the agent upon his own knowledge, and not from information given him by the assured. In that case the assured signed an application for insurance. It had been filled out by the defendant's agent, and the question as to whether or not the applicant had been ill during a certain period was incorrectly answered in the negative. The agent did not propound the question to the assured, but relied upon his own knowledge to answer the question, and after the application had been so filled up the assured signed it. The assured had opportunity to read it, but did not do so, relying upon the agent to correctly state the facts. The court held that such a paper was not the assured's application, but was rather the insurance company's application, and that the policy would not be forfeited because of such untrue answer contained therein.

In the case of *Eames* v. *Home Ins. Co.*, 94 U. S., Mr. Justice Bradley in speaking for the Court, at p. 629 of the opinion, in regard to the effect of truthful representation of conditions to an agent, says: ''As to the objection that the application in this case does not truly set forth the title of the complainants and the amount and nature of the incumbrances on the property, and the amount of insurance in other companies, it is sufficient to say that the evidence abundantly shows that all the facts were fully and frankly communicated to Beach, the agent of the company, and were indeed known to him before; and that he wrote down the answers according to his view of their bearing and legal effect, Eames relying entirely on his experience in such matters. There is no reason to suppose that either Eames or Beach did not act in entire good faith in the transaction. And, indeed, it cannot be pretended that the facts were not substantially as represented in the application. The complainants are represented to be the own-

ers of the property, which is stated to be subject to a mortgage for $6,000. The fact was, that they had purchased the property for $12,000, and had paid $6,200 of the purchase money, the vendor having a lien for the balance of $5,800; But no deed had ever been given. So that, in truth, the complainants did not hold the legal title, although they had an equitable one; and had not given a mortgage, although the vendor's lien was equivalent to one. In another answer, however, explaining the mortgagee's interest, it is stated expressly to be a ''lien on a mill to secure payment of sale.'' As the exact facts were communicated to the agent, and he took the responsibility of stating them in the way he did, leading the applicant to suppose that it was all right, we think it would be great injustice to turn him out of court now for this inexact method of statement. According to the views expressed by this court in *Insurance Company* v. *Wilkinson,* 13 Wall. 222, and other more recent cases, the defendant was concluded by the act of its agent.''

In speaking of the estoppel of an insurance company to deny a statement contained in an application for the reason that the same was inserted therein by its agent upon correct information given such agent, Mr. Justice Miller, speaking for the Supreme Court of the United States, in the case of *Insurance Company* v. *Wilkinson,* 13 Wall. p. 233, says: ''It is in precisely such cases as this that courts of law in modern times have introduced the doctrine of equitable estoppels, or as it is sometimes called, estoppels *in pais.* The principle is that where one party has by his representations or his conduct induced the other party to a transaction to give him an advantage which it would be against equity and good conscience for him to assert, he would not in a court of justice be permitted to avail himself of that advantage. And although the cases to which this principle is to be applied are not as well defined as could be wished, the general doctrine is well understood and is applied by courts of law as well as equity where the technical advantage thus obtained is set up and relied on to defeat the ends of justice or establish a dishonest claim. It has been applied to the precise class

of cases of the one before us in numerous well-considered judgments by the courts of this country.''

In the case of *Pacific Mut. Life. Ins. Co.* v. *Snowden,* 58 Fed. 342, the Circuit Court of Appeals of the United States for the Eighth Circuit, held:''Where an applicant for insurance against accident makes a true and full statement of his occupation to the company's agent, the company is bound, after loss, by the classification which the agent gives him; and if he is wrongly classified, according to the company's rules, the fact that he certifies to an understanding of the company's classification of risks, and that he belongs to the class given, is immaterial, when in fact his only means of understanding such classification is through the representations of the agent.''

The same doctrine is announced in the case of *Mutual Ben. Life Ins. Co.* v. *Robison,* 58 Fed. 723, as follows: ''When an applicant for life insurance, in answer to a question, states the facts fully and truthfully, and the agent of the company, authorized to ask the question and write the answer, putting his own construction on such facts, deduces therefrom an erroneous answer, which he writes down, assuring the applicant that it is the proper answer upon the facts stated, and the one the insurer wants, the insured is not precluded by his warranty in the application from showing the facts and circumstances under which the answer was made, and when so shown the insurer is estopped from questioning the truth of the answer.''

In *Emlaw* v. *Travelers' Ins. Co.,* 108 Mich. 554, the court held: ''An accident insurance policy is not invalidated by the fact that the insured was erroneously classed as 'preferred,' instead of 'medium,' in accordance with a request contained in his application, where, at the time of issuing the policy, the company had before it all the facts essential to enable it to make a proper classification.''

The Supreme Court of Kentucky, in the case of *Mutual Benefit Life Ins. Co.* v. *Daviess' Ex'r.,* 87 Ky. 541, laid down the same doctrine as follows: ''Where an insurance agent, with a full knowledge of the facts, causes the assured to make an untrue answer to a question propounded in his applica-

tion, the company is estopped from relying upon the misrepresentation, in the absence of fraud or bad faith on the part of the assured.''

The Supreme Court of Pennsylvania, in the case of *Kister* v. *Lebanon Mut. Ins. Co.,* 128 Pa. St. 553 (18 Atl. 447) states the doctrine relied upon as follows: ''Where the questions asked the assured by an insurance agent are answered truthfully, but the agent writes down false answers, and cheats the assured into signing a false warranty and paying the premium, a policy issued thereon cannot be avoided on the ground that the warranty was false, nor will the assured be estopped to show the falsehood and deceit of the agent, by the rule that oral evidence is inadmissible to vary or contradict his written warranty.'' See also *McGurk* v. *Metropolitan Life Ins. Co.,* 56 Conn. 528; *New York Acc. Ins. Co.* v. *Clayton,* 56 Fed. 559 (8 C. C. A. 213); *Ins. Co.* v. *Mahone,* 21 Wall. 152.

There are some decisions cited by the defendant company's counsel to the contrary, but we believe that both upon reason and the great weight of authority the defendant company is estopped in this case to say that the assured was not properly classified by its agent, and that the occupation of the assured at the time of the accident which resulted in his death was more hazardous or dangerous than that in which defendant's agent had placed him, in as much as the agent was informed that this was the occupation of the assured at the time the policy was written.

The evidence in this case shows that the only mark on the outside of the body of the assured was a slight scratch upon his face, and it is conceded that his death did not result from this. It is apparent that death resulted because of the severe concussion resulting from the contact of his head with the knee of an opposing player, no doubt causing the rupture of a blood vessel in the brain. Can the defendant company reduce its liability on this policy to one-fifth of the amount thereof because of the provision in the policy that in the event of injuries, fatal or otherwise, of which there shall be no visible marks on the exterior of the body, the limit of the company's liability shall be one-fifth of the amount which

would otherwise be recoverable? The purpose of this provision in accident insurance policies is evidently to protect the insurer against the assertion of fraudulent claims, and in construing it we must give it a reasonable construction, always bearing in mind that it is a contract prepared by the insurer, and will be construed most strongly against it. What is meant by visible marks on the exterior of the body? Is it necessary that there shall be lacerations or contusions in order to prevent this provision from depriving the assured of his indemnity? Or, does it mean such a changed appearance of the body because of the accident as gives notice to all who may observe it that an injury has resulted? Is there not sufficient difference between the living, breathing, animate body and the dull, cold clay to inform the observer that the assured has been affected as the result of an accident, where that accident results in death? In this instance the assured met with a fatal accident. Immediately his lips were sealed, his eyes became sightless, his heart ceased to beat, and respiration stopped. These are such visible evidences upon his body as indicate the result of the accident as unerringly as though he were mangled beyond recognition. Such was the holding of the Supreme Court of Washington, in the case of *Horsfall* v. *Pacific Mut. Life Ins. Co.*, 32 Wash. 132 (63 L. R. A. 425), the Court saying: "Deathly paleness, cold extremities, and cold perspiration on hands and face, and the permanent change of color on the following day from a ruddy hue to a bluish gray, as the result of a dilation of the heart due to a heavy lift, constitute a visible external mark, within the meaning of a policy insuring against injuries, but which provides that it does not cover injuries where there are no visible, external marks upon the body produced at the time of and by the accident."

The New York Court of Appeals, in the case of *Menneiley* v. *Employers' Liability Assurance Corporation*, 148 N. Y. 596 (31 L. R. A. 686) construes this condition as follows: "A provision that death 'from accidents that shall bear no external and visible marks' is not insured against by a life insurance policy means that there must be external and visible evidence that death was accidental, and does not exclude

liability for death caused by accidentally and involuntarily breathing illuminating gas while asleep."

The case of *Peterson* v. *Locomotive Eng. Mut. Life & Accident Ins. Association,* 123 Minn. 505 (35 Am. & Eng. Ann. Cases, 536) (144 N. W. 160) says: "A visible injury within the meaning of the term as used in an accident insurance contract relates to a condition which can be ascertained by observation or examination."

In *Union Casualty & Surety Co.* v. *Mondy,* 18 Col. App., 395, that court said: "A provision in an accident insurance policy to the effect that it does not cover any injury of which there is no visible mark upon the body does not limit the insurance contract to external injuries inflicted upon the surface of the body, but applies as well to internal injuries discoverable and visible upon examination of the body whether such examination be made before or after death."

We are of opinion that the difference between the appearance of the assured just before the accident when in life, and his body immediately after the accident which resulted in death, is a sufficient visible mark or indication to meet the requirements of the policy, and to justify recovery of the full indemnity provided by the policy.

We see no error in the judgment of the Circuit Court of Ohio County, and the same is affirmed.

*Affirmed.*