HAZEL BUCKNAM, Appellee, v. INTERSTATE BUSINESS MEN'S
ACCIDENT ASSOCIATION, Appellant.

**INSURANCE:** Avoidance of Policy—Non-Specific Statement of Oc-
1    cupation—Knowledge of Agent. Fraud in obtaining insurance
may not be predicated on a statement by the insured, in his
application, as to his occupation, when such statement *was true
as far as it went,* but, to the personal knowledge of the com-
pany's agent who took the application, was capable of greater
elaboration as to duties of the insured; especially is this true
when the blanks in the applications were inadequate for elab-
orate explanations.

**INSURANCE:** Receipt of Premiums—Effect. An incorrect state-
2    ment of insured's occupation becomes wholly immaterial when,
subsequent to the issuance of the policy, the insured entirely
changes his occupation, and the insurer, with full knowledge
thereof, continues to receive premiums, and the insured was
killed by reason of the dangers attending the newly assumed
occupation.

*Appeal from Story District Court.*—E. M. McCALL, Judge.

MAY 17, 1918.

SUIT by plaintiff on accident insurance policy or certifi-
cate, to recover $5,000. Defendant filed an equitable cross-
petition, asking a rescission of the contract and that it be
cancelled, because of the alleged fraud of deceased in his
application, and because of a change in his occupation. The
issue raised by the cross-petition was tried, and the same

was dismissed on the merits, and defendant appeals.—
*Affirmed.*

*Dunshee, Haines & Brody,* for appellant.

*C. G. Lee, I. R. Meltzer,* and *C. W. Garfield,* for appellee.

PRESTON, C. J.—1. The points relied upon by appellant, as it states them, are: First, whether there was such a fraud or mistake in the facts as to justify a rescission in equity of the entire contract; and second, whether there was a waiver on the part of the defendant of the alleged fraud or mistake. These are stated by appellee thus:

1. INSURANCE: avoidance of policy: non-specific statement of occupation: knowledge of agent.

(1) Was there material fraud or mistake in the statement by insured of his occupation and duties sufficient to warrant the cancellation of the certificate after his death? (2) Assuming there was fraud or mistake in stating his occupation or duties at the time the certificate was issued, can the company raise such an issue in a case where insured subsequently changed his occupation, and the insurance company, with full knowledge of such change in occupation, has accepted premiums and applied the same before insured is accidentally injured in the course of such new occupation? Defendant's by-laws provided that notice of change of occupation should be given; and it is contended by defendant that, because deceased failed to give such notice, it is released from any liability. The plaintiff pleaded a waiver and estoppel.

It appears that, on April 30, 1913, Harry J. Bucknam applied for insurance and membership in the defendant association. His application was approved, and a policy issued to him. At this time, he was employed as freight cashier for the Chicago & Northwestern Railway Company, at Boone, Iowa, which position he held until March 16, 1915, when he moved to Ames, where he was

thereafter engaged in managing and superintending a transfer or dray line which he had purchased. On October 14, 1915, he fell from the roof of a porch, where he was directing the work of his men in his dray business. He died from such injuries, October 23, 1915.

No authorities are cited by appellant; and its argument is whether, under the evidence, there should be a rescission of the contract. There is not very much dispute in the testimony. The evidence was either undisputed, or such that the court could properly have found the facts substantially as we shall state. So much of the application for the insurance as seems to be material is as follows:

"4. Business or occupation. Cashier in Freight Office.

"5. In what capacity are you employed? Same as above.

"6. State specifically your actual duties. Clerical only.

"7. Name of firm you represent. C. & N. W. Ry. Co.

"Street and Number.———Town.———State.———

"8. Have you any other business or occupation? No."

The above is a reproduction of that part of the application.

Defendant's agent, Doyle, solicited deceased to apply for membership, and on the same date, took his application therefor. The application was filled out and the answers written down by Doyle, who for five years had been employed in the freight department of the Chicago & Northwestern Railway Company, in the general offices at Boone, looking after damaged freight. At the time the application was made, deceased was, in fact, employed as cashier in the freight office, and that was his occupation, as stated in his application, and he had no other occupation.

It is contended by appellant, however, that some of the duties of deceased were more hazardous than stated,

and that, therefore, a fraud was perpetrated upon the company. It appears that it was the duty of deceased, as cashier in the freight office, to go through the yards and check up the cars that were in the yards and to inspect such cars. The inspection consisted especially of noticing the condition of the contents of the cars, taking the seal record, the initial of the car, and the number of all the cars containing perishable freight, also of inspecting the ice boxes on the refrigerator cars. To do this, it was necessary for him to open the hatches of the refrigerator cars and make an inspection of the plugs. This duty required deceased to climb over the refrigerator cars and pull up the hatches, and the result of such inspections was noted on printed blanks. There is some evidence as to the handling of freight by the cashier at Boone; but this was done only occasionally, at most, and seems not to have been any part of his regular duties, but was performed, if at all, only incidentally. We do not understand counsel to rely on this last-mentioned circumstance.

We think the evidence is such that the soliciting agent knew that deceased was required, in the performance of his duties, to do the things before set out. It is true he testified that he had never known that the cashier inspected the refrigerator cars, but it does appear from his testimony that, for about five years prior to the time he had become an insurance agent, he had been employed in the general offices of defendant's railway at Boone, during which time he was employed in an office just west of the freight station, and across the street; during such employment, he had occasion to go out and talk with the freight agents; he was familiar with the duties of freight agents, and states that he was familiar with the duties of the cashier; and that he had frequently heard the cashier talking about checking cars, and that it was part of his regular duty to check the cars. It should have been said

that the company issued policies to freight agents, but it seems that such were required to file a written waiver. However, we do not regard that as very material. So that, considering all the circumstances, taking the three answers in the application together, the character of the duties of deceased, the notice thereof to the company through its soliciting agent, and all the other circumstances, we think the trial court correctly held that deceased was not guilty of false representations, as contended by appellant. As said, the deceased was, in fact, cashier in a freight office. In the subsequent answer, his duties were defined as clerical only. The agent writing the answers understood the duties of the cashier. In defining the duties as clerical only, the term was chosen by the agent. Deceased was justified in relying upon the advice and assistance of the agent in preparing the application. In interpreting the language used, we should give it a reasonable construction in favor of the assured, in order to avoid forfeiture on technical grounds. *Sargent v. Modern Brotherhood,* 148 Iowa 600, 607. It is contended by appellee that the character of the blank application and the amount of space left by the insurer for the applicant to use in his answer is entitled to consideration in construing the application, citing in support *Wilder v. Continental Casualty Co.,* 150 Fed. 92, at 94.

The answers of applicant were as full as the nature of the blanks provided would permit. The company did not ask applicant where his duties were performed. The evidence is that they had a right to make further inquiries, and that they sometimes did so.

Appellee cites *Standard Life & Acc. Ins. Co. v. Fraser,* 76 Fed. 705, at 709. In that case, the applicant stated his occupation as "proprietor of a bar and billiard room, not tending bar," and the evidence showed he tended bar to the extent of relieving his bar tenders at meal hours by waiting on trade; and the court instructed the jury that

the phrase in the policy was intended to describe the occupation—the regular business—of the applicant, and that, if the jury should find from the evidence that he was not engaged in the business or occupation of tending bar as a business or occupation, the defense should be disregarded.

See, also, as bearing upon this, *Mortensen v. Central Life Assur. Assn.*, 124 Iowa 277, 278, 281; *Gotfredson v. German Com. Acc. Co.*, 218 Fed. 582; *Redmond v. United States Health & Accident Ins. Co.*, 96 Neb. 744 (148 N. W. 913).

It seems to us that, since it appears by the undisputed evidence that deceased had changed his occupation entirely, the character of his duties as stated in the application was not connected in any way with his injury. This change of occupation was known to the company and its agents, and because of such change of occupation the company may not now rely upon the statements in the application as to his occupation; and especially is this so if the company has waived the provisions of the policy in regard to change of occupation by accepting premiums with knowledge thereof.

2. INSURANCE: receipt of premiums: effect.

Numerous cases are cited on the different propositions, but we do not feel justified in prolonging the opinion for further discussion at this point.

2. Now, as to the change of occupation, and the claimed waiver by reason of accepting premiums. Appellee contends that the new occupation of deceased was, under the record, an insurable occupation; but they say that, whether this is true or not, if the company accepted premiums, with notice of the character of the new occupation, they are estopped from claiming a forfeiture; and they cite *Miller v. Mutual Benefit Life Ins. Co.*, 31 Iowa 216; *Kesler v. Farmers' Mut. Fire and Lightning Ins. Assn.*, 60 Iowa 374; and other cases.

We shall not take the time to discuss the cases nor set out the evidence on this point. It does appear that defendant's agents did know of the new occupation of deceased after he moved to Ames, which was his occupation at the time he was hurt, and that thereafter, and with such knowledge, the company accepted premiums for a considerable time, and up to the time he was hurt.

It is our conclusion that the trial court rightly decided the issue, and the judgment and decree is, therefore, —*Affirmed.*

WEAVER, GAYNOR, and STEVENS, JJ., concur.