MARY MURRAY, Appellee, v. PREFERRED ACCIDENT INSURANCE COMPANY, Appellant.

**INSURANCE:** Accident Insurance—Concealment of Hazardous Occupation—Effect. No recovery may be had on a policy of accident insurance when the applicant agrees that the policy shall be avoided by any false answer given by him with the intent to deceive or materially affect the acceptance of the risk, and when the applicant, being called upon in the application to make full disclosure of his occupation, specifies one of his occupations, but fails to make mention of an additional occupation (of which the insurer has no express or implied knowledge), of a more hazardous nature than the insurer would insure against, and when the insured was killed while engaged in such unmentioned occupation. So held

where the question *"State fully your occupation, position, and nature of business engaged in and duties performed,"* was answered by the statement, *"Claim agent, office duties and traveling,"* without mention of the fact that the applicant was *also* a special agent, to wit: a sworn special police officer for a railway company.

**INSURANCE:** Life Insurance—Application—Intent to Deceive by
2   **False Answers.** The act of an insured in knowingly failing to make mention of a hazardous occupation pursued by him, generates a presumption of an intent to deceive.

**PRINCIPAL AND AGENT:** Knowledge of Agent—When Knowledge
3   **Not Imputed.** An insurance company, in receiving an application for insurance and issuing a policy thereon, is not chargeable with the knowledge of its *former* agent who had nothing whatever to do with the application or the policy in question.

**Headnote 1:** 1 C. J. p. 421.   **Headnote 2:** 1 C. J. p. 421.   **Headnote 3:** 1 C. J. p. 424.

*Appeal from Polk District Court.*—W. G. VANDER PLOEG, Judge.

JANUARY 13, 1925.

REHEARING DENIED APRIL 8, 1925.

ACTION upon a policy of accident insurance, to recover for the death of the insured. The facts are stated in the opinion. From a judgment upon a directed verdict for plaintiff, the defendant appeals.—*Reversed.*

*Miller, Kelly, Shuttleworth & McManus,* for appellant.

*Clark & Byers,* for appellee.

VERMILION, J.—The appellee is the beneficiary named in a policy of accident insurance, and sued to recover $10,000, the amount the policy provided would be paid to the beneficiary in

1. INSURANCE: accident insurance: concealment of hazardous occupation: effect.

case the insured, Robert Murray, lost his life directly, and exclusively of all other causes, from bodily injury effected solely through accidental means. The petition alleged that the death of the insured was caused by a gunshot wound inflicted by some person to the plaintiff unknown. The appellant's an-

swer denied that the insured came to his death solely through accidental means; alleged, as a complete defense, that he had made a false statement in his application for the policy as to his occupation; and tendered back the premium paid; and further alleged that, prior to his death, he had changed his occupation to one more hazardous than that stated in his application, and that, under the terms of the policy, appellee was, in no event, entitled to recover more than the amount of insurance the premium paid would have procured for one engaged in the more hazardous occupation. In a reply, appellee alleged that the agents of the insurer were fully and truthfully informed as to Murray's duties, before and at the time of the making of the application; and that whatever classification of duties and occupation appeared in the application was written therein by such agent after the insured had given the agent a full and correct statement of his duties; and that, because of such knowledge and the acceptance of premium for the insurance, the insurer was estopped from questioning the statements in the application.

At the conclusion of all the evidence, the court overruled a motion by appellant for a directed verdict in its favor; and, on motion of the appellee, withdrew from the consideration of the jury the defenses so made by appellant, and instructed the jury to return a verdict for appellee for the full amount of the policy. Error is assigned in various forms on these rulings. The conclusion we have reached, after a careful examination of the record, requires us to consider only the ruling withdrawing the defense that the insured had made a false statement in the application for the policy, in respect to his occupation and duties.

The insured, Robert Murray, the son of appellee, was shot and killed while guarding certain prisoners, whom he had assisted in arresting, at a house some few miles out of Council Bluffs. He was, at the time, employed as a special agent for the Chicago & Northwestern Railway Company. He visited the place where he was killed, in company with other special agents of railway companies and certain peace officers, one of whom held a search warrant authorizing a search of the place for intoxicating liquor. He was, at the time, in the line of his employment, and had accompanied the officers in the expectation

or hope that the search to be made would reveal property stolen from the railway company, his employer.

At the time the policy in suit was issued, Murray was employed by the Waterloo, Cedar Falls & Northern Railway Company, operating an electric line. In that employment also, he was known as a special agent. The application for the policy, which became a part of it, and was largely in the form of questions, and answers by the assured, contained an express consent on his part that the falsity of any answer therein should bar a recovery under the policy, if such answer was made with intent to deceive, or materially affected either the acceptance of the risk or the hazard assumed by the insurer. The policy also contained a like provision. In the application for the policy in question, Murray stated that he was employed by the Waterloo, Cedar Falls & Northern Railroad, and that the business of his employer was electric railroading. One of the questions in the application was:

"State fully your occupation—position, nature of business engaged in, and the duties performed?" To that he answered: "Claim agent, office duties, and traveling." These facts are not in dispute.

The application stated that the insured was employed by the electric railway company as a claim agent, and that his duties were office duties and traveling. He was at the time what is known in the railroad business as a special agent. The term special agent is not, in the ordinary meaning of the words, descriptive of the duties pertaining to the position so designated; but it is shown to have in that business a technical and well defined and understood meaning that is not at all suggested by the words themselves, in their ordinary and commonly accepted meaning. Briefly stated, a special agent in the railway service is, as shown by the evidence, a detective, charged with the duty of protecting property belonging to the company or in its possession and securing its return when stolen, and with the investigation of charges of criminal acts committed against the company, its passengers, or property in its custody. His duties are, in substance, those of a peace officer, with respect to the affairs of his employer, and have to do largely with criminal or unlawful acts against the interests of the company. He in-

vestigates the facts in other cases that may be referred to him. Under Murray's employment by the electric railway company, he was required to perform the ordinary duties of a special agent. He had a permit to, and did at times, carry a revolver, and was sworn in as a special police officer or deputy sheriff. He was not expected to make arrests, except where an offense was committed in his presence, but to present the facts to the proper peace officers, and to assist them by identifying stolen property and the like. In addition to these duties, he also performed the duties of a claim agent, with limited authority. He investigated claims against the company arising from injuries to passengers, employees, and others, and to property, and had authority to settle certain classes of claims, up to the amount of $200. It would seem that, in the ordinary railway service, the positions of special agent and claim agent are entirely separate; but in Murray's case, doubtless owing to the relatively smaller operations of the employing company, they were combined. It is not seriously questioned but that one engaged in the work of a special agent, and having to do largely with violations of the criminal laws, and called upon to deal with criminals, would be engaged in a more ' hazardous occupation than a claim agent, whose duty was to investigate and settle civil claims for damages against his employer. The term ''claim agent'' is fairly descriptive of the duty performed. In the schedule of occupations furnished by the appellant to its agents, that of claim agent was classified as an acceptable risk; but the schedule contained no classification of the occupation of special agent. The evidence showed that the appellant insured only persons engaged in occupations classified as preferred or select, and that, if the application had shown that Murray's occupation was that of special agent, it would not have been accepted at the home office of the appellant. Mr. Upham, the agent who took the application, testified that, if he had known that Murray was a special agent for the railway company, he would not have accepted the application for the appellant; that he could have obtained the insurance in some other company.

The application for the policy nowhere disclosed the fact that Murray, in addition to his occupation of claim agent, was also a so-called special agent, or that his duties included those

ordinarily pertaining to the position of a special

2. INSURANCE: life
insurance: ap-
plication: intent
to deceive by
false answers.

agent in the railway service. The answer appeared to be complete; nothing on the face of the application indicated or suggested that it was not. The statement that he was a claim agent, and engaged in office duties and traveling, was not a full answer to the question in the application. It was not untruthful, in the sense that it contained any positive misstatement; yet it was not a truthful answer to the question asking him to state fully his occupation and the nature of the business engaged in and the duties performed. *Phoenix Life Ins. Co. v. Raddin,* 120 U. S. 183 (30 L. Ed. 644). Murray's knowledge that the answer did not fully state his occupation and duties cannot be doubted. In such case, the intent to deceive will be inferred. *Ley v. Metropolitan Life Ins. Co.,* 120 Iowa 203.

But it is insisted by appellee that the agent of appellant who took the application had full knowledge of Murray's occupation and duties, and gave him the classification of claim agent, and that appellant cannot now be heard to question the truthfulness of the statement in the application. The rule contended for has support in the authorities, and has been followed by this court. *Bucknam v. Interstate Bus. Men's Acc. Assn.,* 183 Iowa 652. The difficulty with the application of the rule here is that the facts do not warrant it. A painstaking examination of the record has failed to reveal any evidence that the appellant, or the agent who took the application in question, had at the time any knowledge, or was chargeable with any knowledge, that Murray was engaged in any other occupation than that of claim agent, or that he had or performed any other duties in connection with his position than those ordinarily performed by an adjuster of claims.

Murray had held at least two previous policies written by the appellant. The applications for the former policies were taken by Wayne Gilmore, as agent for appellant. The applications for the earlier policies are not in the record. There is evidence that in the first one Murray gave his occupation as assistant to the general claim agent. Gilmore was agent for appellant for a year or two before he entered the army, in 1917. Before that, he was employed as a special agent by the electric railway

company; he was acquainted with Murray; and they were frequently together. Gilmore was not in the employ of the appellant at the time the application in question was taken, and had no connection with the transaction, and was not a witness on the trial. Mr. Upham, state agent for appellant, whose office was in Des Moines, took the application here involved. He called on Murray at Waterloo for that purpose, on the latter's request for an increased amount of insurance. Upham was the only witness to the transaction of the making of the application. He testified that he read the questions in the application to Murray, who answered them, and he wrote the answers down. He denied any knowledge on his part that Murray's duties were other than office duties and traveling, and denied any knowledge that Murray held any other position than that of claim agent. On cross-examination, he testified:

"I met Murray and took up the matter with him in his office. Prior to that, we had had two policies with him, and I knew he had not changed his occupation in the meantime. I asked about his occupation, because that was one of the requirements. The conversation was very short. I do not suppose I was in his presence over fifteen minutes. I got an appointment with him through a young lady in his office. He had previously told me by letter that he wanted a larger policy; that he was promoted, and had a better income, and would like a policy for himself that paid larger weekly benefits. He wanted a death benefit for his mother. I did not write it in just because she was the one asked for on other forms. I took the application, and undertook to complete it in his office. Something came up in reference to his daily work. He told me the information was over in the bank in a safety deposit box: 'Let's go over there, and I will take out the insurance paper, and that will give it to you quicker.' So we went to the bank, where he got the policy and held it in his hands, and answered the questions as I asked them. I suppose he looked at the other one, to see what he had said previously. I asked him the questions as I came to them, as to his age, date of birth, height, occupation; and he gave me the answers, and I wrote them down. I don't know whether he gave his answers from the other policy or not. I suppose he looked at the other policy and answered the ques-

tion. When he said 'claim agent,' and that his duties were office and traveling, that was all he said. As to what I knew of Murray's duties at Waterloo, I knew he had a desk room, that he made reports and adjusted losses and issued checks for payment, and I suppose he answered his own correspondence at the office. He told me that he was claim agent, and that his duties were office duties and traveling, and that was all he told me. I relied upon my own judgment as to what those duties were. * * * When Robert Murray told me, in answer to this question, 'State fully your occupation, position, and nature of business engaged in and the duties performed,' by saying, 'Claim agent, office duties, and traveling,' I did not know what his traveling duties were. I was never out on the road with him, and did not know what he did when he traveled.''

The appellee testified that, in a conversation with Upham, after her son's death, he said he had been at Waterloo two or three days, at the time the application was taken, and spoke about Robert's making a trip to Chicago, to bring back some lady, prior to that time; that he said it was good work; that he saw it in the newspapers at the time it happened. She was unable to say whether this was in connection with some case in May, 1921, or whether the woman was wanted as a witness in some damage suit. T. Murray, the father of the insured, testified:

''I had a conversation with Mr. Upham with respect to his trip to Waterloo to see my son Robert about the insurance represented in this policy. Mr. Upham, when we were in his office, told me and my wife that he had been to Waterloo with my son several days. He spoke of my son going to Chicago while he was with the Waterloo, Cedar Falls & Northern, and bringing back a woman that had committed some offense; and said it was quite a job on his part to go up there and bring her back. He seemed to know all about it.''

On cross-examination, he testified:

''I know about my son going to Chicago to bring back some woman in May, 1921 * * * They wanted her to appear as a witness in a case against the Waterloo Railroad and testify for the railroad.''

Upham testified that he never spent a day, or two or three

days, with Robert Murray, and never saw him until he wrote the application; that he did not know why the woman was brought back from Chicago, and had never heard before of Robert Murray's going to Chicago and bringing back some woman. We think that the testimony of the father and mother, conceding, as we must in the present situation, that it is true, affords no ground for even an inference that Upham, at the time the application was taken, had knowledge of Robert Murray's duties as a special agent.  The conversation testified to occurred after Robert Murray's death; the transaction said to have been spoken of by Upham on that occasion is not shown to have occurred prior to the issuance of the policy; and from the testimony of T. Murray, it would appear to have been some time subsequent, and to have been of such a character as would come within the duties of a claim agent, rather than those of a special agent.

It is claimed that Gilmore, the agent who took the prior applications for insurance, must, by reason of his acquaintance with Robert Murray and his former employment by the same railroad company as a special agent, have had full knowledge of Murray's duties.  But Gilmore was not in the employ of the appellant at the time the application in question was taken, and had not been for three or four years, and had no connection whatever with this transaction.  The appellant is not to be charged with knowledge possessed by a former agent, who had no connection with the transaction in question, and who was not then in its employ.  The principal is chargeable with the knowledge possessed by the agent because the agent acted for him, and the acts of the agent were his acts, and the knowledge of the agent of all matters connected with the transaction in which the agent acted as such, was his knowledge.  But the principal is not chargeable in subsequent transactions, with which the agent had nothing to do, with knowledge possessed by the agent while acting as such. *Second Nat. Bank v. Curren,* 36 Iowa 555; *Chicago Lbr. & Coal Co. v. Garmer,* 132 Iowa 282; 2 Corpus Juris 867.

3. PRINCIPAL AND AGENT: knowledge of agent: when knowledge not imputed.

It is argued, however, that Gilmore, with knowledge of Murray's occupation and duties, gave him a classification in the

former applications which Upham merely adopted in the application for the present policy, and that the appellant is, therefore, chargeable with such knowledge as Gilmore had. But it was Murray who suggested consulting the prior policy; it was he, not Upham, who consulted it; it is not shown what policy he in fact consulted, or what it showed with reference to his occupation or duties. Conceding the utmost that can be claimed for the testimony, it amounts to an attempt to charge Upham with knowledge that the insured had other duties than those stated in the instant application, because Gilmore, a former agent, with knowledge that he had such duties, took one application which gave the insured's occupation as assistant to the general claim agent, and a subsequent application, the contents of which are not shown, and because Murray, before stating his occupation in the present application, consulted one or the other of these former policies. We think that Upham is not, from such facts, charged, nor the appellant, through him, with knowledge that the occupation of the insured was more hazardous, or that he had other and more hazardous duties, than as stated in the present application. The cases cited by appellee do not support such an application of the rule. In *Bucknam v. Interstate Bus. Men's Acc. Assn.*, supra, it was held, upon a cross-petition in equity to cancel a contract of accident insurance because of fraud in the application, that the soliciting agent who took the application had actual knowledge of the duties of the insured, and that, in the defining of his duties as clerical only, the term was chosen by the agent. In *Zimmerman v. Bankers Cas. Co.*, 138 Minn. 442 (165 N. W. 271), also cited, it was claimed that the failure to mention in the application an operation for hernia was such a fraudulent concealment as avoided the policy; but, in view of the testimony that the plaintiff fully informed the agent taking the application all about the operation, and handed the agent an old policy that mentioned it, and thought the application mentioned it, it was held that the misstatement was that of the company, through its agent who wrote out the application, and not that of the insured. In *Arneberg v. Continental Cas. Co.*, 178 Wis. 428 (190 N. W. 97), another cited case, it is said:

"It is quite generally, if not universally, held that, where

the insurer's agent fills out the application for an insurance policy, knowing or having been properly informed by the applicant of facts demanded by questions therein, mistakes in the application as to such facts do not avoid the policy.''

*Parker v. North American Acc. Ins. Co.,* 79 W. Va. 576 (92 S. E. 88), is another case cited by appellee. We quote from the syllabus by the court:

''An accident insurance company is estopped to deny that a party insured by it was placed in the wrong classification, when such classification was made by its agent upon full and truthful information given such agent as to the employment and occupation of the assured.''

It is clear that the facts of the present case do not bring it within the rule of these cases.

The death of the insured resulted from a hazard to which his employment as special agent, with the attendant necessity of dealing with criminals, and the duty to assist regular peace officers and to identify and recover property stolen from his employer, subjected him. The record is such that it admits of no doubt that his occupation materially affected the hazard assumed by the insurer; that a true statement in the application of such occupation and duties would have materially affected the acceptance of the risk by the insured; and that, the falsity of the statement being known to the insured, a purpose to deceive is to be inferred.

It is clear that the court erred in withdrawing from the jury the issue as to the false statement made by the insured in the application for the policy relating to his occupation and duties, and in directing a verdict for the appellee. Since this results in a reversal, it is unnecessary to determine whether appellant was entitled to a directed verdict in its favor. The evidence may not be the same upon another trial.

For the error pointed out, the judgment is reversed and the cause remanded.—*Reversed and remanded.*

FAVILLE, C. J., and STEVENS and DE GRAFF, JJ., concur.