MARY MURRAY, Appellee, v. PREFERRED ACCIDENT INSURANCE COMPANY OF NEW YORK, Appellant.

**INSURANCE: Actions on Policies—Law of Case—Directed Verdict.**
1  An insurer may not have a directed verdict on the ground that the insured had, in his application, incorrectly stated his occupation (1) when, on a former appeal, the law of the case had been settled to the effect that recovery might be had if the insurer had full knowledge of such occupation notwithstanding such incorrect statement, and (2) when the record presents a jury question on such issue of knowledge. (See Book of Anno., Vols. I, II, Sec. 11508.)

**APPEAL AND ERROR: Harmless Error—Error Cured by Granting New Trial.**
2  An erroneous ruling against a party necessarily becomes harmless when he is granted a new trial.

**EVIDENCE: Immateriality—Habits of Insured.** In an action on a
3  policy of insurance, evidence as to the habits and industry of the insured is wholly immaterial, there being no issue in the case on such matters.

WITNESSES: Impeachment—Documentary Contradiction.   Testimony
4  that an insurance company would not have issued a policy to an
   insured, had it known his true occupation, may be met by the
   introduction of policies which negative such testimony.   (See Book
   of Anno., Vols. I, II, Sec. 11255.) .

   Headnote 1:  1 C. J. p. 509; 4 C. J. p. 1093.   Headnote 2:  4 C. J. ·
p. 1023.  Headnote 3:  33 C. J. p. 112.   Headnote 4:  40 Cyc. p. 2777.

   Headnote 1:  2 R. C. L. 224.

*Appeal from Polk District Court.*—W. G. BONNER, Judge.

DECEMBER 13, 1927.

An action to recover on a policy of insurance issued by the defendant company, in which the plaintiff is named as beneficiary. From a directed verdict in favor of the plaintiff for a part of the sum claimed under the policy, the court, on motion of the plaintiff, granted a new trial, and from the ruling of the court granting the new trial, and also from an adverse ruling on the motion of the defendant for a directed verdict in its favor, defendant appeals.—*Affirmed.*

*Miller, Kelly, Shuttleworth & McManus,* for appellant.

*Clark, Byers & Brunk,* for appellee.

ALBERT, J.—In January, 1921, Robert G. Murray took out a policy with the defendant, The Preferred Accident Insurance Company of New York, naming his mother, Mary Murray, plaintiff herein, as beneficiary. This policy was for $10,000. He was killed on or about October 14, 1921, while engaged with officers of the law in searching a house on what is known as the "Snyder Farm," a few miles distant from the city of Council Bluffs. This is the second appeal of this case, the opinion in the first appeal appearing in 199 Iowa 1195.

1. INSURANCE: actions on policies: law of case: directed verdict.

At the close of all of the evidence in the case, the defendant first made a motion to direct a verdict in its favor, which motion was overruled. Defendant then made a motion that the court direct a verdict in favor of the plaintiff and against the defendant in the sum of $4,000, with 6 per cent interest. In making this last motion, and as a part thereof, it is said:

"Defendant now, without in any manner waiving said motion [the motion to direct verdict in favor of the defendant] or its exception to said ruling, is still insisting that said prior motion should be sustained by the court, and without waiving any of its rights, now makes this second motion to direct verdict."

This last motion was sustained; and on direction of the court, the jury returned a verdict in favor of the plaintiff and against the defendant for the sum of $4,000, with interest at 6 per cent from October 14, 1921, and judgment was entered thereon accordingly. Whereupon, the plaintiff filed a motion for a new trial, and as a ground therefor claimed that the court erred in directing a verdict for the plaintiff for the sum of only $4,000 on the alleged ground that plaintiff's deceased had changed occupation; whereupon the court sustained the motion for a new trial, without stating any reasons therefor.

The defendant's appeal is from the ruling of the court granting a new trial, and also because of the refusal of the court to sustain the first motion of the defendant to direct a verdict in its favor. To the latter proposition we will first give attention.

The answer filed by the defendant in this case pleads two defenses: (1) That certain false and fraudulent statements were made by Murray in his application for this policy; and (2) that, after the application was made, and the policy issued, Murray changed from his occupation to one that was more hazardous, and therefore, under the terms of the policy, if defendant failed in its first defense, its liability would only be $4,000. It will be well to consider at this point just what the holding of this court was on the first appeal, as such holding is the law of the case on the second trial. *Adams County v. B. & M. R. Co.*, 55 Iowa 94; *Barton v. Thompson*, 56 Iowa 571; *Boeck v. Modern Woodmen*, 183 Iowa 211; *Anthon St. Bank v. Bernard*, 198 Iowa 1345; *Norman v. City of Sioux City*, 200 Iowa 1343.

On the first appeal of the case we held that the holding of the district court directing a verdict in favor of the plaintiff was erroneous. This holding was bottomed on two propositions:

(1) That in the application one of the questions was, "State fully your occupation—position, nature of business en-

gaged in, and the duties performed.'' To which the applicant answered, ''Claim agent, office duties and traveling.'' We there held that, in view of the evidence in the case, which tended to show that Murray was a special agent of the Waterloo, Cedar Falls & Northern Railway Company, the answer made to the question was not truthful, in that it did not fully state his occupation and duties,—thereby holding that such untruthful statements, under the provisions of the policy, would defeat recovery in the first instance.

(2) That, if the agent of the company who took the application had full knowledge of Murray's occupation and gave him the classification of claim agent, then appellant cannot now be heard to question the truthfulness of the statements of the application (citing our former case of *Bucknam v. Interstate Bus. Men's Acc. Assn.*, 183 Iowa 652.)

As to this last defense, we stated, however, that the record on that appeal failed to reveal any evidence that the appellant or the agent who took the application had, at the time, any knowledge, or was chargeable with any knowledge, that Murray was engaged in any other occupation than that of claim agent, or that he had or performed any other duties in connection with his position than those ordinarily performed by an adjuster of claims. These holdings in our former opinion are the law of the case.

. The evidence on behalf of the defendant herein shows that the company was notified that Murray desired to change his policy, and S. W. Upham, resident state agent of the defendant company at Des Moines, Iowa, in January, 1921, went to Waterloo, to take this matter up with Murray. The application bore date January 10, 1921. Upham's testimony with reference to what took place is that he (Upham) filled out this application, and that the same was signed by Murray; that he read the questions, and truthfully recorded in full Murray's answers. He further testified:

''I did not know that he [Murray] had any duties in connection with police work. I did not know that he had duties to investigate pilfering and theft from the railroad. I did not know that he had any duties to perform other than office duties and traveling. I did not know that he was engaged in performing the duties of a special agent for the railroad company, or

that he was a deputy sheriff, or that he carried a gun. He did not tell me that he did any of these things in connection with his business.''

The evidence in the case undisputedly shows that, when Murray made this application, part of his employment at least was that of a special agent of the company, and that he was a deputy sheriff, and his duties were to investigate pilfering, robbery, and theft from the railroad company, and that he carried a gun, and did general detective work for the company. Murray subsequently left the employ of the Waterloo, Cedar Falls & Northern Railway Company, and took employment with the Chicago & Northwestern Railway Company, with headquarters at Norfolk, Nebraska. His employment there was similar to his employment at Waterloo. In both instances he had claims to look after, and did general detective and police work for the company. The defendant, seeking to avoid the effect of this policy at this point, has the burden of proof of showing, by a preponderance of the evidence, the alleged matters by which it seeks to avoid its liability. Want of knowledge on the part of the company is testified to by Upham alone, and under the facts, later to be related, the question of the credibility of this witness was for the jury. The plaintiff and her husband both testify to several interviews with Upham after the death of their son Robert. The substance of their testimony (without setting it out in full) is that Upham in these conversations told them that he was well acquainted with their son Robert, and that he spent several days with him at the time his application was made; that Upham then told them that he (Murray) had to go out and examine all of these claims, look up thefts, and run down burglaries; that he went into the yards with Murray, and Murray told him that his work was ''looking over the cars, if there were any seals broken, and going out and investigating robberies, and such as that.''

While it is true that plaintiff and her husband did not testify to these matters on the former trial, they say that their reason for not doing so was because they were not asked questions that would develop this line of testimony; but, regardless of this, the fact that they may not have testified to these particular facts on the former trial would go to the weight of

their testimony, and not to its competency. In *Den. Hartog v. Home Mut. Ins. Assn.,* 197 Iowa 143, we said:

"It is universally held, so far as we have discovered, that the insurer will not be permitted to avoid the policy by taking advantage of a misstatement in the application, material to the risk, which is due to mistake or negligence of its agent, and not to fraud or bad faith on the part of the insured."

Certainly, under this state of the record, plaintiff has made a prima-facie showing which entitled her to go to the jury. The court therefore did not err in overruling defendant's motion for a directed verdict.

As to the ruling of the court on the second motion to direct a verdict for plaintiff in the sum of $4,000, this ruling was perhaps erroneous; but if so, it was cured by sustaining the motion for a new trial.

2. APPEAL AND ERROR: harmless error: error cured by granting new trial.

Other questions are discussed, to a few of which we will give attention:

On the first appeal of this case, it was settled that knowledge on the part of a former agent of the company, Wayne Gilmore by name, was not chargeable to the company. It necessarily follows that the testimony relative to knowledge on the part of such agent Gilmore is not admissible in this case.

Over objection of the defendant, the plaintiff was permitted to introduce testimony with reference to the habits and industry of the deceased, Robert Murray. This testimony was

3. EVIDENCE: immateriality: habits of insured.

foreign to any issue in the case, and should not have been admitted; but, in the light of the subsequent developments, it was nonprejudicial. On a retrial, such testimony should be omitted.

Upham claimed in his testimony that, had it been known just what the business of the insured was, he would not have recommended, and his company would not have accepted, this

4. WITNESSES: impeachment: documentary contradiction.

risk, claiming that the company did not issue policies to persons engaged as "special agents" in work of this kind. The plaintiff thereupon tendered in evidence two policies issued by this company, one to Welch and the other to Finch, which in fact were issued a number of years before the Murray policy, but which were being carried by the company at the time of this trial. While

not of very material importance, these policies were admissible, to be taken into consideration by the jury in determining the credibility of the testimony of the witness Upham.

Some other questions are discussed, but, as they are not likely to arise on a retrial of the case, we give them no further consideration.

Since we hold that the court rightly ruled on defendant's first motion for a directed verdict and erroneously sustained the second motion, it follows that the plaintiff has made a case for the jury, and the motion for a new trial was properly granted.— *Affirmed.*

EVANS, C. J., and DE GRAFF, MORLING, and WAGNER, JJ., concur.