406 S.E.2d 736

**Lorna D. JARVIS, Plaintiff Below, Appellee,**

v.

**MODERN WOODMEN OF AMERICA and Charles Lewis Webb, Defendants Below, Appellants.**

**No. 19794.**

Supreme Court of Appeals of West Virginia.

Submitted May 15, 1991.
Decided June 27, 1991.

Carl F. Stucky, Jr., Steptoe & Johnson, Charleston (Orton A. Jones, of counsel),

Hedges, Jones, Whittier & Hedges, Spencer, for appellants.

Alan H. Simms, Elizabeth, for appellee.

PER CURIAM:

Modern Woodmen of America, a life insurance company and Charles L. Webb, an agent for Modern Woodmen, appeal a Roane County jury verdict awarding Lorna D. Jarvis $625,000, including $100,000 for economic losses, $25,000 for non-economic losses and $500,000 in punitive damages. The case arose from Modern Woodmen's refusal to pay Mrs. Jarvis death benefits under a Modern Woodmen's policy issued on her late husband, Harley Jarvis. On appeal, Modern Woodmen and Mr. Webb argue that Mrs. Jarvis is barred from recovering under the life insurance policy because she knew of and failed to correct the wrong information on her husband's insurance application. However, Mrs. Jarvis maintains that Mr. Webb, the agent who took Mr. Jarvis' insurance application, was told the correct information, but advised Mr. Jarvis to submit incorrect information in order to get the insurance. Because we find no error in the jury's resolution of a basic factual question and their determination of damages, we affirm the decision of the circuit court.

In May 1985, Mr. Webb approached Mr. Jarvis and made an appointment to discuss life insurance. Mr. Webb had known Mr. Jarvis for several years and was a substitute mailman for Mr. and Mrs. Jarvis. In May 1985, Mr. Jarvis had an incontestable life insurance policy from Peoples Life Insurance Co. for $50,000. According to Mrs. Jarvis, during the meeting with Mr. Webb, Mr. Jarvis informed Mr. Webb that he wanted a less expensive life insurance policy because he had stopped working in September 1984 due to mental problems. During the meeting, Mr. Jarvis, a heavy smoker who carried cigarettes in his shirt pocket, was told by Mr. Webb that it would be better if the application said Mr. Jarvis was a non-smoker, had no serious health problems, and was currently working. Mrs. Jarvis also claims that Mr. Webb did

not explain that the Peoples Life policy was noncontestable and that the Modern Woodmen's policy would be contestable for a period of two years.

Also present at various times during the May 1985 meeting with Mr. Webb were Mr. and Mrs. Watson, the son-in-law and daughter of Mr. and Mrs. Jarvis. Both Mr. and Mrs. Watson testified that Mr. Jarvis, a chain smoker, smoked during the meeting and carried cigarettes in his shirt pocket. They also testified that Mr. Jarvis explained he wanted cheaper insurance because he was not working due to a mental breakdown. Mr. and Mrs. Watson also testified that Mr. Webb said he was not putting the information on the insurance application because it would "look bad" and that Mr. Jarvis acquiesced. Mrs. Watson testified that Mr. Webb was shown the Peoples Life insurance policy and told Mr. and Mrs. Jarvis that the policy could be surrendered for cash.[1]

Mr. Webb denies that Mr. Jarvis told him that he smoked, had mental health problems and was no longer working. Mr. Webb also said that Mr. Jarvis told him that the Peoples Life policy had lapsed. The insurance application, dated May 18, 1985 containing the incorrect information, was completed by Mr. Webb and was signed by Mr. Jarvis. Although Mr. and Mrs. Jarvis had a checking account and Mrs. Jarvis paid the first month's premium, Mr. Webb used his personal check to set up an automatic deduction to pay the premiums on Mr. Jarvis' policy from his (Webb's) personal checking account. This was to assure that the premiums would be paid long enough for Mr. Webb to get his commission. After Modern Woodmen notified Mr. Webb that he could not use his personal checking account to pay the premiums on Mr. Jarvis' policy, the automatic deduction was then switched to Mr. and Mrs. Jarvis' checking account.

Mrs. Jarvis knew that the application contained wrong information but did nothing. On May 28, 1985, Mrs. Jarvis, based on Mr. Webb's advice, cashed in the Peoples Life policy for $933.18.

Mr. Jarvis died on December 6, 1986 of cardiopulmonary arrest and, because Mr. Jarvis' death occurred within the two-year contestability period, Modern Woodmen investigated the claim. The investigation showed that Mr. Jarvis' application contained substantial misrepresentations concerning Mr. Jarvis' health, employment and smoking. Modern Woodmen, by letter dated January 28, 1987, denied the claim and refunded the premiums paid, $655.72.

Mr. Webb asked to present personally the benefit check and he knew that payment on the claim was delayed because of an investigation. Mr. Webb was, indeed, the mailman on the day the denial letter was sent and he asked Mrs. Jarvis if he could stay with her when she opened the letter from Modern Woodmen. After Mrs. Jarvis read the denial letter and started to cry, Mr. Webb, after receiving Mrs. Jarvis' permission, read the denial letter.

On February 9, 1987, Mrs. Jarvis contacted Modern Woodmen and told them that Mr. Webb knew of and encouraged the wrong information on Mr. Jarvis' application. Mrs. Jarvis also informed Modern Woodmen that Mr. Webb was telling potential customers that the $50,000 benefit had been paid.[2] According to a telephone memo taken by Modern Woodmen, the person who received the information "will pass this on to the proper person who will contact her [Mrs. Jarvis]." Modern Woodmen sent a questionnaire to Mr. Webb, in which Mr. Webb denied any knowledge of the application's misrepresentations. Modern Woodmen's investigation stopped with the questionnaire and Mrs. Jarvis was never contacted. Mr. Webb continued to sell insurance for Modern Woodmen until he was fired in April 1989 for insufficient sales.

---

1. In addition to the life insurance policy on Mr. Jarvis, Mr. Webb sold the following family members life insurance: Mrs. Jarvis—$10,000, Lorra Jarvis, a daughter—$5,000, and Harley Jarvis, Jr., a son—$5,000.

2. Mr. Webb denied telling potential customers that Mrs. Jarvis received benefits. However, a customer, who purchased insurance through Mr. Webb on February 28, 1987, testified that Mr. Webb said Mrs. Jarvis had been paid benefits.

The case was submitted to the jury, which returned a verdict in favor of Mrs. Jarvis awarding her $100,000 for economic losses, $25,000 for non-economic losses and $500,000 in punitive damages, for a total award of $625,000. Modern Woodmen and Mr. Webb appealed to this Court claiming that: (1) Mrs. Jarvis is barred from recovering under the policy because she knew of and acquiesced to the misrepresentations in Mr. Jarvis' application; (2) Mrs. Jarvis should not have been awarded economic damages based on the Peoples Life insurance policy; and, (3) the evidence did not justify the award of punitive damages.

Because the errors claimed by the defendants are primarily based on factual questions, we affirm the judgment as the jury's resolution of the factual questions. We also find that the actions of the insurance agent that were acquiesced in by Modern Woodmen (*infra* Section III) justify the jury's award of punitive damages.

## I.

Mr. Webb and Modern Woodmen's first assignment of error is based on their version of the disputed facts concerning the completion of Mr. Jarvis' insurance application. According to Mr. Webb and Modern Woodmen, Mr. Jarvis gave incorrect information to Mr. Webb, who merely transcribed the incorrect information on the application. Mrs. Jarvis knew that the information was wrong and because she failed to correct the misrepresentations, she should be barred from receiving the benefits of her deception.

In support of their version of the facts Mr. Webb and Modern Woodmen cite to *W.Va.Code,* 33-6-7 [1957] and a line of cases holding that fraudulent or material misrepresentations will render a policy void.[3] *See Powell v. Time Ins. Co.,* 181 W.Va. 289, 382 S.E.2d 342, 348 (1989) (discussing the statute and overruling cases following "the common law concept of warranties with regard to statements by an insured in an application for insurance"); *Christian v. State Farm Mut. Auto Ins. Co.,* 144 W.Va. 746, 753, 110 S.E.2d 845, 849–50 (1959) (holding "[f]raud on the part of the insured in the procurement of the policy ... is sufficient to defeat a recovery in an action on such policy"); *Lengyel v. Lint,* 167 W.Va. 272, 280 S.E.2d 66 (1981) (defining our traditional rule regarding fraud).

■ However, Mrs. Jarvis maintains that Mr. Webb was given the correct information and decided not to include it on Mr. Jarvis' application. Mrs. Jarvis argues that Mr. Webb, the agent for Modern Woodmen, has a duty to prepare accurately the application and that Mr. Webb's knowledge is imputed to Modern Woodmen. In Syllabus Point 1, *McDonald v. Beneficial Standard Life Ins. Co.,* 160 W.Va. 396, 235 S.E.2d 367 (1977), we stated:

"If the facts regarding the risk are correctly stated to the agent of an insurance company, but erroneously inserted by him in the application, the company is chargeable with his error or mistake...." *Syllabus, Bays v. Farmers' Mutual Fire Association of West Virginia,* 114 W.Va. 164, 171 S.E. 253 (1933).

*In Accord, Powell, supra* 181 W.Va. at 298, n. 10, 382 S.E.2d at 351 n. 10; *Lewis v. State Automobile Mut. Ins. Co.,* 115 W.Va. 405, 177 S.E. 449 (1934); *Moore v. United Ben. Life Ins. Co.,* 145 W.Va. 549, 115 S.E.2d 311 (1960); *Parker v. North American Accident Ins. Co.,* 79 W.Va. 576, 92 S.E. 88 (1917); *Hawkins v. Southwestern*

---

**3.** *W.Va.Code,* 33-6-7 [1957], provides:

All statements and descriptions in any application for an insurance policy or in negotiations therefor, by or in behalf of the insured, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealments of facts, and incorrect statements shall not prevent a recovery under the policy unless:
(a) Fraudulent; or

(b) Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or
(c) The insurer in good faith would either not have issued the policy, or would not have issued a policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or otherwise.

*Mutual Fire Ins. Co.*, 80 W.Va. 773, 93 S.E. 873 (1917); 16C J. Appleman, *Insurance Law & Practice* § 9104 [1981].

█ Considering the conflicting testimony presented concerning the source of the misrepresentations on Mr. Jarvis' application, we find that the matter was correctly submitted to the jury for resolution.

> Where, in the trial of an action at law before a jury, the evidence is conflicting, it is the province of the jury to resolve the conflict, and its verdict thereon will not be disturbed unless believed to be plainly wrong.

Syllabus Point 2, *French v. Sinkford*, 132 W.Va. 66, 54 S.E.2d 38 (1948). *In accord,* Syllabus Point 7, *Keister v. Talbott*, 182 W.Va. 745, 391 S.E.2d 895 (1990); Syllabus Point 3, *Pinnacle Min. Co. of Northern West Virginia v. Duncan Aircraft Sales of Florida, Inc.*, 182 W.Va. 307, 387 S.E.2d 542 (1989); *Casteel v. Consolidation Coal Co.*, 181 W.Va. 501, 383 S.E.2d 305 (1989); *McDonald, supra.* Our review of the record shows that there is sufficient evidence to support the jury's resolution of the conflicting evidence concerning the source of the misrepresentations in Mr. Jarvis' application. We, therefore, find the first assignment of error to be without merit.

## II.

Mr. Webb and Modern Woodmen also maintain that the jury should not have awarded Mrs. Jarvis economic damages based on the Peoples Life Insurance Policy because it had either lapsed or been replaced by the Modern Woodmen policy.[4] Although the defendants maintain that they thought the Peoples Life policy had lapsed, Mr. Webb completed a chart comparing the Peoples Life policy to the Modern Woodmen policy. In addition Modern Woodmen sent a replacement notification to Peoples Life.

The evidence shows that Mr. Jarvis purchased life insurance to take care of his family and that when he could afford it, he had two $50,000 life insurance policies. In May 1985 when Mr. Webb sold Mr. Jarvis the Modern Woodmen policy for $50,000, Mr. Jarvis had a $50,000 incontestable life insurance policy from Peoples Life in effect. According to Mrs. Jarvis' expert, the Peoples Life policy could have been in effect when Mr. Jarvis died, without the payment of additional premiums under an extended term option. However, according to Mrs. Jarvis, she, on the advice of Mr. Webb cashed in the policy.[5]

█ In Syllabus Point 1, *Pinnacle Mining, supra*, we stated our rule regarding the sufficiency of evidence:

> "In determining whether there is sufficient evidence to support a jury verdict the court should: (1) consider the evidence most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inference which reasonably may be drawn from the facts proved."

Syllabus Point 5, *Orr v. Crowder*, 173 W.Va. 335, 315 S.E.2d 593 (1984) [sic] [ (1983), *cert. denied*, 469 U.S. 981, 105 S.Ct. 384, 83 L.Ed.2d 319 (1984) ].

*In accord,* Syllabus Point 4, *Bennett v. 3C Coal Co.*, 180 W.Va. 665, 379 S.E.2d 388 (1989); Syllabus Point 3, *Vercellotti v. Bowen*, 179 W.Va. 650, 371 S.E.2d 371 (1988); Syllabus Point 6, *McClung v. Marion County Comm'n.*, 178 W.Va. 444, 360 S.E.2d 221 (1987); Syllabus Point 3, *Hayseeds, Inc. v. State Farm Fire & Cas.*, 177 W.Va. 323, 352 S.E.2d 73 (1986).

---

**4.** The defendants also argue that evidence of the Peoples Life policy should have been excluded under Rules 401 and 402 of the *West Virginia Rules of Evidence* [1985]. Because the evidence of the Peoples Life policy was relevant and material, it was clearly admissible under the *West Virginia Rules of Evidence.*

**5.** Mr. Webb and Modern Woodmen maintain that jury Instruction No. 15 erroneously permitted the jury to consider the Peoples Life policy. Because we find that evidence of the Peoples Life policy was properly before the jury and that the jury could consider damages based on the Peoples Life policy, we find the instruction, taken in context, contained no error.

The evidence heard by the jury, when considered most favorably to Mrs. Jarvis, supports the award of $100,000 in economic losses based on both $50,000 life insurance policies. Mr. Webb's failure to advise adequately Mr. and Mrs. Jarvis concerning the options of the Peoples Life insurance policy as well as the costs of shifting life insurance policies should not be used as evidence to limit the jury's consideration of damages.[6] Because there is sufficient evidence of Mrs. Jarvis' economic losses, we decline to substitute our opinion for the jury's determination and thus, we find no merit in the defendants' second assignment of error.

### III.

Finally, Mr. Webb and Modern Woodmen argue that the $500,000 award of punitive damages was not justified. On appeal, Modern Woodmen argues that even if Mr. Webb's "conduct was tantamount to willful, wanton, or reckless," Modern Woodmen should not have to pay punitive damages because they did not authorize or ratify the misconduct.[7]

In Syllabus Point 3, *Warden v. Bank of Mingo*, 176 W.Va. 60, 341 S.E.2d 679 (1985), we stated:

> "To sustain a claim for punitive damages, the wrongful act must have been done maliciously, wantonly, mischievously, or with criminal indifference to civil obligations. A wrongful act, done under a bona fide claim of right, and without malice in any form, constitutes no basis for such damages." Syl. pt. 3, *Jopling v. Bluefield Water Works & Improvement Co.*, 70 W.Va. 670, 74 S.E. 943 (1912).

*See Hayseeds, supra* 177 W.Va. at 330, 352 S.E.2d at 80 (holding "that an insurer is not liable for punitive damages by its refusal to pay a claim unless such refusal is accompanied by a malicious intent to injure or defraud"); Syllabus Point 1, *Shamblin v. Nationwide Mut. Ins. Co.*, 183 W.Va. 585, 396 S.E.2d 766 (1990). In *Hensley v. Erie Ins. Co.*, 168 W.Va. 172, 283 S.E.2d 227 (1981), we noted that we followed "the traditional rule that punitive damages are awarded to punish the defendant (citations omitted)" and we also recognized "that punitive damages are also awarded 'to deter others from pursuing a like course of conduct.'" *Id.*, 168 W.Va. at 183, 283 S.E.2d at 233. In *Hensley*, we held that "[t]he law accords the plaintiff an extra measure of recovery for any number of reasons where the defendant has been found guilty of gross, reckless or wanton negligence." *Id.*, 168 W.Va. at 184, 283 S.E.2d at 233.

The evidence in the record shows that Mr. Webb was told of Mr. Jarvis' mental and financial problems and nonetheless encouraged Mr. Jarvis to drop a policy that was incontestable in order to purchase a new policy that had a two-year contestability period. Mr. Webb gave Mr. and Mrs. Jarvis incomplete information about the policy in effect in order to sell them a new policy—a policy on which Mr. Webb would receive a commission. In addition after Mr. Jarvis died, Mr. Webb, knowing that he asked to present the benefit check and that the claim was being investigated, stayed to watch Mrs. Jarvis read the denial letter, which he, as mailman, delivered. Even after Mr. Webb knew the claim was denied, he continued to tell prospective customers that benefits had been paid to Mrs. Jarvis. We find that there was sufficient evidence in the record for the jury to find that Mr. Webb's actions constituted gross, reckless or wanton negligence.

Modern Woodmen's attempts, on appeal, to distance themselves from the egregious actions of their agent, Mr. Webb, in order to avoid punitive damages are not

---

**6.** Mr. Webb and Modern Woodmen alleged that the circuit court added pre-judgment interest on the total damages. However, the circuit court's order of March 13, 1990 only included prejudgment interest on Mrs. Jarvis' economic losses from January 28, 1987, the date of the denial letter. *See* Syllabus Point 1, *Grove By and Through Grove v. Myers*, 181 W.Va. 342, 382 S.E.2d 536 (1989); *Miller v. Monongahela Power Co.*, 184 W.Va. 663, 403 S.E.2d 406, 415–16 (1991).

**7.** Although Mr. Webb and Modern Woodmen maintain that the jury instructions regarding punitive damages were in error, their arguments concerning the jury instructions repeat their arguments concerning punitive damages.

persuasive. Modern Woodmen hired Mr. Webb as their agent and they continued to employ Mr. Webb even after they had knowledge of his actions. Even before Mr. Webb sold insurance to Mr. Jarvis, Modern Woodmen's agency manager reported that Mr. Webb was lazy, incompetent and disgruntled. Modern Woodmen quickly became aware of Mr. Jarvis' unusual payment method and requested that Mr. Webb change Mr. Jarvis' premium payment from Mr. Webb's personal checking account. However, Modern Woodmen did no other investigation of Mr. Webb or his sales practices of replacing life insurance. Modern Woodmen's own rules discourage the replacement of life insurance because of the disadvantages that are shown in this case.

After Mrs. Jarvis informed Modern Woodmen on February 9, 1987, that Mr. Webb was responsible for the application's misrepresentations, and was telling potential customers that benefits had been paid to Mrs. Jarvis, Modern Woodmen sent a questionnaire to Mr. Webb, who denied the allegations. Modern Woodmen's investigation stopped and Mrs. Jarvis was never contacted. Mr. Webb's employment by Modern Woodmen finally ended in April 1989 for insufficient sales.

In Syllabus Point 2, *Harless v. First Nat'l. Bank in Fairmont*, 169 W.Va. 673, 289 S.E.2d 692 (1982), we stated:

"An agent or employee can be held personally liable for his own torts against third parties and this personal liability is independent of his agency or employee relationship. Of course, if he is acting within the scope of his employment, then his principal or employer may also be held liable." Syllabus Point 3, *Musgrove v. Hickory Inn, Inc.*, 168 W.Va. 65, 281 S.E.2d 499 (1981).

*See also*, Syllabus Point 4, *Hains v. Parkersburg, Marietta & Interurban Ry. Co.*, 75 W.Va. 613, 84 S.E. 923 (1915) (holding "if a servant's negligence is wanton and willful or malicious, the master is liable for exemplary or punitive damages"); Syllabus Point 4, *Ricketts v. Chesapeake & O. Ry. Co.*, 33 W.Va. 433, 10 S.E. 801 (1890) (requiring the servant's actions be "expressly or impliedly authorized or ratified by the company").

The jury determined that Modern Woodmen's conduct expressly or impliedly authorized or ratified the actions of Mr. Webb. The evidence, viewed in favor of the prevailing party, supports the jury's determination. *Pinnacle Mining*, supra. In Syllabus Point 4, *Harless, supra,* we stated:

"Punitive or exemplary damages are such as, in a proper case, a jury may allow against the defendant by way of punishment for wilfulness, wantonness, malice, or other like aggravation of his wrong to the plaintiff, over and above full compensation for all injuries directly or indirectly resulting from such wrong." Syllabus Point 1, *O'Brien v. Snodgrass*, 123 W.Va. 483, 16 S.E.2d 621 (1941).

Finally we note that Mr. Webb and Modern Woodmen allege that a $500,000 award of punitive damages is excessive. Our standard for judging the amount of punitive damages was stated in Syllabus Point 3, *Reager v. Anderson*, 179 W.Va. 691, 371 S.E.2d 619 (1988):

"Courts must not set aside jury verdicts as excessive unless they are monstrous, enormous, at first blush beyond all measure, unreasonable, outrageous, and manifestly show jury passion, partiality, prejudice or corruption." Syl. pt. 1, *Addair v. Majestic Petroleum Co.*, 160 W.Va. 105, 232 S.E.2d 821 (1977).

*In accord, City Nat. Bank of Charleston v. Wells*, 181 W.Va. 763, 384 S.E.2d 374, 385 (1989); Syllabus Point 4, *Muzelak v. King Chevrolet, Inc.*, 179 W.Va. 340, 368 S.E.2d 710 (1988); *McClung v. Marion County Comm'n.*, 178 W.Va. 444, n. 13, 360 S.E.2d 221, 232 n. 13 (1987) (and cases cited therein); *Roberts v. Stevens Clinic Hosp., Inc.*, 176 W.Va. 492, 345 S.E.2d 791 (1986) (requiring *remittitur* of $7,000,000).

Although we admit that this test is "a largely subjective exercise on the part of appellate judges" (*Id.*, 176 W.Va. at 501, 345 S.E.2d at 800), under this test, we find that the damage award in this case was not clearly excessive. We find that the record supports the verdict against Modern Wood-

men and its agent, Mr. Webb and the amount of punitive damages is not "outrageous" because Modern Woodmen could have avoided the whole problem by paying Mrs. Jarvis some money.

For the reasons discussed above, we, therefore, affirm the final order of the Circuit Court of Roane County.

Affirmed.