Nicholas GRUBBS and Carolyn Grubbs, Plaintiffs,

v.

WESTFIELD INSURANCE COMPANY and John Drennen, Defendants.

No. CIV.A. 1:05CV156.

United States District Court, N.D. West Virginia.

May 5, 2006.

Alex J. Shook, Hamstead, Williams & Shook, PLLC, Billie Anne Shepherd, Hamstead, Williams & Shook, PLLC, Morgantown, WV, for Nicholas Grubbs, Carolyn Grubbs, Plaintiffs.

Peter G. Zurbuch, Busch, Zurbuch & Thompson, PLLC, Elkins, WV, for Westfield Insurance Company, John Drennen, Defendants.

## ORDER DENYING PLAINTIFF'S MOTION TO REMAND AND GRANTING DEFENDANT'S MOTION TO DISMISS

KEELEY, District Judge.

On March 16, 2006, the Court conducted a scheduling conference in this case at which it heard oral argument concerning pending opposing motions to remand and dismiss. For the reasons that follow, the Court **DENIED** the motion to remand of the plaintiffs, Nicholas and Carolyn Grubbs' ("the Grubbs"), and **GRANTED** the defendant, John Drennen's ("Drennen"), motion to dismiss.

### I. Facts

On September 19, 2002, the Grubbs purchased a home in Morgantown, West Virginia from Louis and Rita Sokos ("the Sokos") for $230,500. Shortly after moving in, they discovered structural damage to the home. In August, 2003, the Grubbs submitted a property damage claim to their insurer, defendant Westfield Insurance Company ("Westfield"). On December 11, 2003, Westfield, through Drennen, a Westfield claims manager, denied the claim.

On March 25, 2004, the Grubbs filed a lawsuit against the Sokos and a home inspector, Jeffery Davis ("Davis"), in the Circuit Court of Monongalia County, West

Virginia. The Grubbs alleged that the Sokos had failed to properly disclose the damaged condition of their home, and that Davis had negligently inspected the property. On April 20, 2004, the Sokos filed a counterclaim against the Grubbs alleging breach of contract, indemnification, intentional and negligent infliction of emotional distress, and malicious prosecution.

On September 21, 2004, the Grubbs submitted the counterclaim to Westfield, seeking coverage and a defense. On November 15, 2004, Westfield, again through Drennen, denied coverage and refused to provide the Grubbs with counsel to defend the claim.

The Grubbs eventually settled with both Davis and the Sokos. On April 20, 2005, in exchange for a release from the Grubbs of any claims against him, Davis purchased the damaged home from the Grubbs for $230,500, the same amount the Grubbs originally had paid for the home. On August 18, 2005, the Grubbs and Sokos settled their dispute, and agreed to dismiss all pending claims with prejudice.

On August 31, 2005, the Grubbs requested that Westfield reimburse them for the legal expenses they incurred in the lawsuit with the Sokos. Drennen submitted the request to Westfield Center (Home Office) for consideration of payment. However, on September 27, 2005, Westfield, through Drennen, denied the claim.

## II. Procedural History

On November 7, 2005, the Grubbs filed this action against Westfield, an Ohio corporation, and Drennen, a West Virginia resident, in the Circuit Court of Monongalia County. In their suit, the Grubbs seek a declaration, pursuant to the West Virginia Uniform Declaratory Judgment Act, stating Westfield's obligations under the insurance contract. Additionally, the Grubbs argue that their property damage claim and their requests for coverage and

a defense for the Sokos' counterclaims were wrongfully denied.

On December 5, 2005, Westfield removed the case to this Court on the basis of diversity of citizenship and asserted that Drennen had been fraudulently joined as a party to a declaratory judgment action.

On December 7, 2005, Drennen filed a motion to dismiss and memorandum in support, also based on fraudulent joinder. In his motion, Drennen argues that, because he was not a party to the insurance contract at issue in the declaratory judgment action, he is not a proper, necessary or indispensable party; thus, the complaint fails to state a claim against him upon which relief may be granted. Fed. R.Civ.P. 12(b)(6); *see also* Fed.R.Civ.P. 19.

On December 30, 2005, pursuant to 28 U.S.C. § 1447(c), the Grubbs filed a motion to remand and memorandum in support arguing that their complaint was intended to allege a declaratory judgment action against Westfield and common law bad faith causes of action against both Westfield and Drennen. The Grubbs interpret Syllabus Point 3, *Musgrove v. Hickory Inn, Inc.,* 168 W.Va. 65, 281 S.E.2d 499 (1981), to permit an insurance adjuster to be held liable for common law bad faith under general agency law principles. Accordingly, the Grubbs argue that Drennen should remain a party to the action and the Court should remand the case to state court pursuant to 28 U.S.C. §§ 1332 and 1441.

On January 17, 2006, Westfield and Drennen filed a memorandum of law opposing the plaintiffs' motion to remand, in which they argue that there is no common law bad faith cause of action against insurance adjusters in West Virginia. They contend that, "[u]nder West Virginia law, common law bad faith actions are predicated on the covenant of good faith and fair

dealing implicit in every contract," and, because adjusters are not parties to the insurance contract out of which the covenant arises, there can be no bad faith cause of action against them.

### III. Standard of Review

The party seeking removal bears the burden of showing that the district court has original jurisdiction. *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir.1994). "[C]ourts should resolve all doubts about the propriety of removal in favor of retained state court jurisdiction." *Hartley v. CSX Transportation, Inc.*, 187 F.3d 422, 425 (4th Cir.1999). However, if a party can demonstrate that a non-diverse defendant was fraudulently joined, the party can remove a case to federal court when diversity jurisdiction otherwise exists. *Mayes v. Rapoport*, 198 F.3d 457, 461–62 (4th Cir.1999). The fraudulent joinder doctrine "effectively permits a district court to disregard, for jurisdictional purposes, the citizenship of certain non-diverse defendants, assume jurisdiction over a case, dismiss the non-diverse defendants, and thereby retain jurisdiction." *Id.* at 461.

To prove fraudulent joinder, the removing party must show either "[t]hat there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or [t]hat there has been outright fraud in the plaintiff's pleading of jurisdictional facts." *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir.1993) (citation omitted). Moreover, "[t]he burden on the defendant claiming fraudulent joinder is heavy: the defendant must show that the plaintiff cannot establish a claim against the nondiverse defendant even after resolving all issues of fact and law in

the plaintiff's favor." *Id.* at 232–33 (citation omitted).

The fraudulent joinder "standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6)." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir.1999). Accordingly, "[a] claim need not ultimately succeed to defeat removal; only a possibility of a right to relief need be asserted." *Marshall*, 6 F.3d at 233 (citing 14A Charles A. Wright et al., *Federal Practice & Procedure* § 3723, at 353–54 (1985)).

In the Fourth Circuit, a motion to dismiss under Rule 12(b)(6) should only be granted in "very limited circumstances." *Rogers v. Jefferson–Pilot Life Ins. Co.*, 883 F.2d 324, 325 (4th Cir.1989). Dismissal is appropriate, however, if it appears that the plaintiff "would not be entitled to relief under any facts which could be proved in support of their claim." *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir.1991) (citation omitted).

When reviewing the legal sufficiency of a complaint, the court must "accept as true all well-pleaded allegations and must construe the factual allegations in the light most favorable to the plaintiff." *Randall v. United States*, 30 F.3d 518 (4th Cir.1994) (citation omitted). The court is not, however, "so bound by the plaintiff's legal conclusions, since the purpose of Rule 12(b)(6) is to test the legal sufficiency of the complaint." *Id.* (citation omitted).

### IV. Analysis

This Court may exercise jurisdiction if the amount in controversy exceeds $75,000 and if there is complete diversity of citizenship between the parties. 28 U.S.C. § 1332. The amount in controversy is not an issue in this case;[1] therefore, because

---

1. The defendants have offered competent proof establishing that the amount in contro-

versy exceeds the jurisdictional minimum. 28 U.S.C. § 1332(a); *See, e.g., Asbury–Casto v.*

Drennen is a non-diverse party, the Court need only decide the opposing motions to dismiss and remand to determine whether it has jurisdiction. Both motions depend on the existence of a common law bad faith cause of action against an insurance adjuster, and, accordingly, the Court should apply the same analysis. 28 U.S.C. §§ 1332, 1441.[2]

Although the Grubbs correctly state the general agency principle that "[a]n agent or employee can be held personally liable for his torts against third parties and this personal liability is independent of his agency or employee relationship," Syl. Pt. 3, *Musgrove,* 168 W.Va. 65, 281 S.E.2d 499, this principle does not extend to the present cause of action. As the defendants correctly argue, because insurance adjusters are not parties to the insurance contract, no common law bad faith cause of action exists against Drennen under West Virginia law.

■■ In *Elmore v. State Farm Mut. Auto. Ins. Co.,* 202 W.Va. 430, 504 S.E.2d 893, 897 (1998), the West Virginia Supreme Court of Appeals stated:

> [T]he common law duty of good faith and fair dealing in insurance cases under our law runs between insurers and insureds and is based on the existence of a contractual relationship. In the absence of such a relationship there is simply nothing to support a common law duty of good faith and fair dealing on the part of insurance carriers towards third-party claimants.

Thus, under *Elmore*'s holding third party claimants cannot bring common law bad faith causes of action against insurance companies because there is no contractual relationship between them. *Elmore,* 202 W.Va. 430, 504 S.E.2d 893.

■ Insurance agents, likewise, have no contractual relationship with insureds. *Shrewsbery v. National Grange Mutual Insurance Co.,* 183 W.Va. 322, 395 S.E.2d 745, Syl. Pt. 2 (1990). In *Shrewsbery,* the West Virginia Supreme Court of Appeals stated that "*[a]n insurance agent is not a party to an insurance contract;* he is but an incidental beneficiary to the contract between insured and insurance company . . . ." *Id.* (emphasis added).

■ Furthermore, under West Virginia law, insurance agents clearly owe a duty to their employer-insurance company, not the insured:

> Any person who shall solicit within this state an application for insurance shall, in any controversy between the insured or his or her beneficiary and the insurer issuing any policy upon such application, be regarded as the agent of the insurer and not the agent of the insured.

W.Va.Code § 33–12–22. An insurance adjuster employed by an insurance company is also not a party to the insurance contract. *See* W.Va.Code §§ 33–12B–1 to 33–12B–3. While insurance adjusters may become licensed to represent the interests of both insurance companies and insureds,[3] in order to avoid creating a conflict of interest, they are prohibited from representing both on the same claim. W.Va.Code § 33–12B–3. Adjusters act "on behalf solely of either the insurer or insured." W.Va.Code § 33–12B–1. Therefore, West Virginia's law clearly indicates that, while insurance companies owe a duty of good faith and

---

*GlaxoSmithKline, Inc.,* 352 F.Supp.2d 729 (N.D.W.Va.2005).

**2.** The defendant also raised a statute of limitations defense that, for the reasons stated on the record, the Court found meritless.

**3.** *See* W.Va.Code §§ 33–12B–1 to 33–12B–3. For purposes of this analysis, the Court is considering only the duties of adjusters employed by insurance companies.

fair dealing to their insureds, agents and adjusters owe their allegiance solely to the insurance company.

 Recently, the West Virginia Supreme Court of Appeals decided that an insurance adjuster can be held personally liable for statutory bad faith under the Unfair Trade Practices Act ("UTPA"), W. Va.Code § 33–11–1 *et. seq.. See Taylor v. Nationwide Mut. Ins. Co.*, 214 W.Va. 324, 589 S.E.2d 55 (2003). Yet, in *Taylor*, the court clearly stated: "A claims adjuster's individual liability arises from a positive duty created by statute and not from the common law." *Id.* at 61–62 (W.Va.2003). Thus, in the absence of both a duty arising from a contractual relationship and also a duty arising from statute, there is "simply nothing to support a common law duty of good faith and fair dealing" on the part of insurance agents or adjusters towards insureds. *Elmore*, 504 S.E.2d at 897.

 The Grubbs argue that Drennen could be held liable for common law bad faith under a general agency theory, and cite to Syl. Pt. 3, *Musgrove*, 168 W.Va. 65, 281 S.E.2d 499:

> An agent or employee can be held personally liable for his own torts against third parties and this personal liability is independent of his agency or employee relationship. Of course, if he is acting within the scope of his employment, then his principal or employer may also be held liable.

In contrast to the facts here, however, the tort at issue in *Musgrove* was assault. *Musgrove*, 168 W.Va. 65, 281 S.E.2d 499. Unlike common law bad faith, a plaintiff can establish all of the necessary elements of assault without establishing a contractual relationship between the plaintiff and the defendant. Conversely, in order to allege a claim of common law bad faith claim, a plaintiff must establish that the defendant is a party to the insurance con-

tract. *Elmore*, 504 S.E.2d at 897. "In the absence of such a relationship there is simply nothing to support a common law duty of good faith and fair dealing ...." *Id.*

Though cited by neither party, the Court was able to locate only one case in which the West Virginia Supreme Court of Appeals cited to the agency principle set forth in *Musgrove* in the insurance context. Upon close analysis, however, that opinion does not suggest that a common law bad faith claim exists under West Virginia law against an insurance agent. In *Jarvis v. Modern Woodmen of America and Charles Webb*, 185 W.Va. 305, 406 S.E.2d 736 (1991), the insurance agent, Charles Webb ("Webb"), was held individually liable to insureds after engaging in particularly egregious conduct in procuring their insurance contract. Webb had encouraged Jarvis to falsify his insurance application by denying that he was a smoker and omitting other health problems. Upon Jarvis's death, Modern Woodmen conducted an investigation, discovered that Jarvis's application contained substantial misrepresentations concerning his health, employment and smoking, and denied the claim. *Id.* at 738–39.

Although Webb had denied having knowledge of the misrepresentations in the insurance application, Jarvis's wife insisted that Webb had been given correct information, but had chosen not to include it on the application. *Id.* at 739–40. On review, West Virginia's highest court concluded that there was sufficient evidence to support the jury's verdict on liability, and that there also was "sufficient evidence in the record for the jury to find that Mr. Webb's actions [had] constituted gross, reckless or wanton negligence," the level of proof necessary to justify the punitive damages the jury had awarded. *Id.* at 741–42.

Although the court in *Modern Woodmen* never explicitly stated so, discussion in the

case suggests that Jarvis's wife had pursued a negligence claim against Webb, not a common law bad faith claim. *See Hayseeds v. State Farm Fire & Cas.*, 177 W.Va. 323, 352 S.E.2d 73, 80 (1986)(a common law bad faith claim requires finding a refusal to pay a claim "accompanied by a malicious intent to injure or defraud"). In fact, as the facts make clear, Webb's egregious conduct had arisen not from the refusal to pay the claim, as typically contemplated in common law bad faith actions, but, rather, from the procurement of the insurance contract. *Modern Woodmen*, 185 W.Va. 305, 406 S.E.2d 736.

On appeal, Modern Woodmen had attempted to distance itself from Webb's actions in an effort to avoid liability for the punitive damages awarded by the jury. *Id.* at 742–43. Nevertheless, because Modern Woodmen had continued to employ Webb, despite having received complaints about his behavior and having had knowledge of his egregious sales practices, the Supreme Court upheld the jury finding that Modern Woodmen had expressly or impliedly authorized or ratified Webb's behavior. *Id.* at 743. Relying on the agency principle articulated in *Musgrove*, therefore, it found Modern Woodmen liable for Webb's conduct. *Id.* Thus, in *Modern Woodmen*, the court simply applied traditional principles of tort and agency law to hold both Webb and his employer liable for Webb's bad behavior and his employer's ratification of it.[4]

The holding in *Modern Woodmen* has no application to the facts in this case, where the Grubbs seek to hold the agent, Drennen, liable for "wrongful denial" of coverage, but have failed to allege that he engaged in any tortious conduct. Thus, because common law bad faith is not an independent tort that can be established outside a contractual relationship, and Drennen is not a party to any contract of insurance between the Grubbs and Westfield, he cannot be held personally liable under West Virginia law for performing the assigned duties of his employment.[5]

## V. Conclusion

Drennen is a Westfield employee, and, indisputably, is not a party to the Grubbs' insurance contract. As such, he owes no common law duty of good faith and fair dealing to them. Moreover, there are no allegations that he engaged in other actionable conduct, either inside or outside the scope of his employment.

Therefore, even after resolving all issues of fact and law in the Grubbs' favor, the Court finds that Drennen was fraudulently joined in this action because the Grubbs cannot establish any cause of action under West Virginia law against him. Accordingly, the Court **DENIES** the Motion to Remand (Doc. No. 10) and **GRANTS** the Motion to Dismiss (Doc. No. 6).

It is so **ORDERED**.

The Clerk is directed to transmit a copy of this order to counsel of record.

---

4. It is not known whether Jarvis's wife pled a common law bad faith cause of action against the insurance company for refusal to pay the claim in light of Webb's prior egregious actions, or if she merely sought to impute his negligence to the insurer based on the agency principle, or if she pursued both.

5. This view of the tort of common law bad faith is shared by several other jurisdictions. *See, e.g., Youngs v. Security Mut. Ins. Co.*, 3 Misc.3d 244, 775 N.Y.S.2d 800 (N.Y.2004), *Wolverton v. Bullock*, 35 F.Supp.2d 1278 (D.Kan.1998), *Hill v. Giuffrida*, 608 F.Supp. 648 (S.D.Miss.1985), *Griffin v. Ware*, 457 So.2d 936 (Miss.1984).