729 S.E.2d 890

**Roger W. GOFF, Appellant**

v.

**PENN MUTUAL LIFE INSURANCE COMPANY, Appellee.**

**No. 11–1020.**

Supreme Court of Appeals of West Virginia.

Submitted May 30, 2012.

Decided June 21, 2012.

Gregory H. Schillace, Schillace Law Office, Clarksburg, WV, for Appellant.

Robert J. Ridge, Thorp, Reed & Armstrong, LLP, Wheeling, WV, for Appellee.

McHUGH, Justice:

Appellant Roger W. Goff seeks relief from the May 25, 2010, order of the Circuit Court of Harrison County dismissing his complaint against Appellee Penn Mutual Life Insurance Company ("Penn Mutual") for failure to state a claim upon which relief can be granted.[1] As the primary beneficiary under an insurance policy issued by Penn Mutual, Appellant brought a cause of action under the West Virginia Unfair Trade Practices Act,[2] asserting that Penn Mutual had violated the statutory duty of good faith and fair dealing. *See* W.Va.Code § 33–11–4(9) (2011). After deciding that Mr. Goff did not meet the accepted definition of either a first- or a third-party bad faith claimant, the trial court concluded that Mr. Goff could not assert a statutory bad faith claim against Penn Mutual. Limiting his argument to cases involving life insurance benefits, Mr. Goff posits that a

beneficiary stands in the shoes of a decedent insured for purposes of bringing a statutory bad faith claim. Upon our careful review of the applicable statutory provisions and case law, we agree that a primary life insurance beneficiary may assert a statutory bad faith action upon the death of the insured. Having determined that the trial court committed error in dismissing Mr. Goff's claim, we reverse and remand this matter for further proceedings.

## I. Factual and Procedural Background

The insured, Betty J. Toler, purchased a life insurance policy[3] from Penn Mutual on March 18, 2007. Under the application for insurance benefits, Appellant[4] was named as the primary beneficiary. Ms. Toler's adult children, Jennifer Toler Ooten and Jeremy Toler, were named as contingent beneficiaries.

Following the death of Betty Toler on August 25, 2008,[5] Jennifer Toler Ooten was appointed as the executrix of the estate. Because Betty Toler died within a two-year period of the policy's issuance, Penn Mutual undertook a routine claims investigation to learn whether any material misrepresentations were made during the application process.[6] The investigation took longer than usual because Ms. Toler Ooten did not provide Penn Mutual with a signed authorization until March 23, 2009. The authorization was required for Penn Mutual to gain access to medical records pertinent to the claims inquiry.

Another factor which affected the timely payout of benefits was the claim that both Ms. Toler Ooten and Mr. Toler asserted to the policy proceeds. After obtaining the medical authorization, Penn Mutual determined that Ms. Toler Ooten had dropped her claim but Mr. Toler was still insisting on his right to the insurance benefits in question. According to Mr. Goff, he and his counsel

---

1. *See* W.Va.R.Civ.P. 12(b)(6).

2. *See* W.Va.Code §§ 33–11–1 to –10 (2011).

3. The life insurance policy had a face value of $100,000.

4. Mr. Goff was the live-in boyfriend of Ms. Toler.

5. The medical examiner determined that she died from stage III endometrial carcinoma with a three-month period between onset and death.

6. This investigation was authorized by the terms of the policy.

were not apprised of this dispute concerning the rightful beneficiary until August 3, 2009.[7]

Mr. Goff filed suit against Penn Mutual and the decedent insured's two children on August 4, 2009. Not only did Appellant seek a declaration that he was the proper beneficiary of the subject insurance proceeds, but he also sought to recover damages for Penn Mutual's failure to pay him under the insurance contract.[8] Mr. Goff asserted that Penn Mutual breached its duty of good faith and fair dealing to him as the beneficiary and that it used unfair settlement practices in violation of West Virginia Code § 33–11–4(9).

With the trial court's permission, Penn Mutual paid the insurance proceeds plus interest into the court on December 4, 2009.[9] Penn Mutual then sought to be dismissed from the action based on Appellant's assertion of a third-party statutory bad faith claim—a claim that had been abolished by the Legislature.[10] By order entered on May 25, 2010, the trial court dismissed Penn Mutual from the subject action. Through this appeal, Mr. Goff seeks to have his statutory bad faith claim reinstated against Penn Mutual.

## II. Standard of Review

■ As we recognized in syllabus point two of *State ex. rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995), "[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." We proceed to determine whether the trial court committed error in dismissing Appellant's statutory bad faith claim.

## III. Discussion

Presented as a matter of first impression is the issue of whether a beneficiary of a life insurance contract has the right to bring a statutory bad faith action against an insurer under West Virginia Code § 33–11–4(9). Appellant argues that he has a right to pursue an action against Penn Mutual for violating the statutory duty of good faith and fair dealing which governs matters of insurance settlement. Seeking to stand in the shoes of the decedent insured for purposes of asserting this claim, he takes the position that the legislative abolition of third-party bad faith actions has no bearing on this right. *See* W.Va.Code §§ 33–11–4a (2005); 33–11–4(9). Conversely, Penn Mutual maintains that Mr. Goff cannot bring a statutory bad faith action against it given his inability to qualify as a first-party claimant and the elimination of third-party statutory claims.

When asked to resolve this issue, the trial court undertook a review of this Court's decisions involving first- and third-party bad faith actions. As an initial matter, the trial court noted our holding in *Elmore v. State Farm Mutual Automobile Insurance Co.*, 202 W.Va. 430, 504 S.E.2d 893 (1998), that "a third party claimant has no cause of action against an insurance carrier for common law breach of the implied covenant of good faith and fair dealing or for common law breach of fiduciary duty." *Id.* at 438, 504 S.E.2d at 901. In explanation of that ruling, we stated:

[T]he common law duty of good faith and fair dealing in insurance cases under our law runs between insurers and insureds and is based on the existence of a contractual relationship. In the absence of such a relationship there is simply nothing to support a common law duty of good faith and fair dealing on the part of insurance carriers toward third-party claimants.

*Id.* at 434, 504 S.E.2d at 897.[11]

The trial court proceeded to wrestle with whether a life insurance beneficiary falls into

---

7. While not pertinent to the issue before us, the record includes a timeline of events relevant to Appellant's claim of statutory bad faith.

8. By order entered on May 4, 2011, the trial court ruled in favor of Mr. Goff with regard to his claim that he was the proper beneficiary under the subject insurance policy. That decision was affirmed on appeal to this Court. *See Toler v. Goff*, No. 11–0911, 2012 WL 2892326 (W.Va.Sup.Ct. Jan. 13, 2012) (memo. decision).

9. The amount deposited with the court was $105,185.32.

10. Through its enactment of West Virginia Code § 33–11–4a in 2005, the Legislature expressly abolished the right of third-party claimants to bring statutory bad faith actions pursuant to West Virginia Code § 33–11–4(9).

11. We observed in *Elmore* that this position was in line with the "overwhelming weight of authority on this issue." 202 W.Va. at 434, 504 S.E.2d at 897.

the first- or third-party category for purposes of asserting a bad faith claim.[12] For guidance on this issue, the trial court turned to the definitions this Court provided for these terms in *State ex rel. Allstate Insurance Co. v. Gaughan*, 203 W.Va. 358, 508 S.E.2d 75 (1998):

> The terms "first-party" and "third-party" have distinctively different meanings in the context of bad faith settlement actions against insurers. For definitional purposes, a first-party bad faith action is one wherein the insured sues his/her own insurer for failing to use good faith in settling a claim brought against the insured or a claim filed by the insured. A third-party bad faith action is one that is brought against an insurer by a plaintiff who prevailed in a separate action against an insured tortfeasor.

*Id.* at 369, 508 S.E.2d at 86 (footnotes omitted).

Applying these definitions, the trial court reasoned that Mr. Goff, as the named primary beneficiary of the Penn Mutual policy, "is neither the insured nor the insurer and accordingly cannot fall into the definition of a first-party bad faith claimant." Because the insured had not filed the subject bad faith claim against Penn Mutual, the trial court wholly discarded the possibility that Mr. Goff's action could fall within the ambit of a first-party action. With regard to whether the subject claim could qualify as a third-party action, the trial court reasoned that the foundational predicate for a third-party claim was missing because Mr. Goff had not previously prevailed in an action against Betty Toler.[13]

While Appellant cited two decisions in support of his argument that existing law permits him to bring a statutory bad faith claim, the trial court correctly rejected each of these decisions as inapposite. In the case of *Romano v. New England Mutual Life Insurance Co.*, 178 W.Va. 523, 362 S.E.2d 334 (1987), the decedent insured's son brought a bad faith suit against the insurer. Rather than instituting the lawsuit as a policy beneficiary, however, the plaintiff filed suit in his capacity as executor of his father's estate. This distinction is critical because the plaintiff, as the executor of the insured's estate, was clearly standing in the shoes of a first-party claimant—the insured.[14]

Equally unavailing is Appellant's reliance on our decision in *Jarvis v. Modern Woodmen*, 185 W.Va. 305, 406 S.E.2d 736 (1991). At issue in *Jarvis*, was an insurer's refusal to pay death benefits based on misrepresentations in the policy application as well as the agent's responsibility for those misrepresentations. Although a life insurance beneficiary instituted the action, she merely sought to enforce the contractual terms rather than to recover for bad faith settlement practices. *Id.* at 307, 406 S.E.2d at 738.

As support for his position that he should be permitted to assert a claim of statutory bad faith against Penn Mutual, Appellant looks to how other courts have addressed this issue. In one such case, the Oklahoma Supreme Court held that an action for breach of the implied-in-law duty of good faith and fair dealing lies in favor of a life insurance beneficiary. *See Roach v. Atlas Life Ins. Co.*, 769 P.2d 158, 162 (Okla.1989). In reaching that decision, the appellate court reasoned:

> There must be either a contractual or statutory relationship between the insurer and the party asserting the bad faith claim

---

12. The trial court discussed how the terms "bad faith" and "unfair settlement practices" are typically used interchangeably. *See Light v. Allstate Ins. Co.*, 203 W.Va. 27, 30 n. 5, 506 S.E.2d 64, 67 n. 5 (1998) (acknowledging "technical distinction" between terms while noting that alternating term usage occurs because common law bad faith elements are included in statutory claims).

13. The trial court also noted that Mr. Goff did not qualify as a third-party claimant under the definition of that term provided in West Virginia Code § 33–11–4a. The statutory definition requires the assertion of "a claim against any individual, corporation, association, partnership or other legal entity *insured* under an insurance policy." *Id.* at 33–11–4a(j) (emphasis supplied).

14. While *Romano* recognizes that group insureds can sue directly to enforce the provisions of a group contract as "beneficiaries of the insurance contract," the use of the term "beneficiaries" in that context is distinct from a life insurance beneficiary. *See* 178 W.Va. at 527, 362 S.E.2d at 338.

before the duty arises. The beneficiary of a life insurance contract meets both criteria for assertion of the right. *A third-party beneficiary contract exists if the proceeds of an insurance policy are payable to third persons.* Title 15 O.S. 1981 § 29 provides that a contract, made expressly for the benefit of a third person, may be enforced at any time before the parties thereto rescind it. Before recession, third party beneficiaries are entitled to enforce any contract made for their benefit.

769 P.2d at 161 (emphasis supplied and footnotes omitted).

West Virginia has its own version of the statute that the court relied upon in *Roach* for purposes of recognizing a legislated relationship between the insurer and the party. Under the provisions of West Virginia Code § 55-8-12 (2008), it has long been the law that

> [i]f a covenant or promise be made for the sole benefit of a person with whom it is not made, or with whom it is made jointly with others, such person may maintain, in his name, any action thereon which he might maintain in case it had been made with him only, and the consideration had moved from him to the party making such covenant or promise.

W.Va.Code § 55-8-12. Focusing on the statutory inclusion of the term "sole," Penn Mutual argues that this statute cannot apply in view of the insured's decision to name contingent beneficiaries. We disagree. The use of the term "sole" does not mean the inclusion of more than a single beneficiary prevents this provision from taking effect. *See Erwin v. Bethlehem Steel Corp.*, 134 W.Va. 900, 62 S.E.2d 337 (1950) (applying W.Va.Code § 55-8-12 where intended beneficiary is designated class rather than single individual); *see also Aetna Life Ins. Co. v. Maxwell*, 89 F.2d 988, 993–94 (4th Cir.1937) (defining "donee beneficiary" as someone who benefits from contractual promise that donor had no obligation to make and indicating that "sole beneficiary" in W.Va.Code § 55-8-12 was used to designate "donee beneficiary").

As a matter of first impression, a Wisconsin court decided in *Estate of Plautz v. Time Insurance Co.*, 189 Wis.2d 136, 525 N.W.2d 342 (Wis.App.1994), that a life insurance beneficiary could bring a bad faith cause of action following the death of the named insured. *Id.* at 347. In reaching that conclusion, the appellate court focused on two factors. The first was the exception to the statutory requirement that every action must be prosecuted in the name of the real party in interest. That common law exception exists in Wisconsin where the contract was specifically made for the benefit of a third party. 525 N.W.2d at 346–47. The second factor that the court noted was its concern that if a beneficiary was denied the right to bring such an action, no one could ever bring a bad faith action arising out of a life insurer's unreasonable handling of a death benefits claim. 525 N.W.2d at 346. The court commented, "quite obviously, '[t]he failure to afford a cause of action for bad faith to the beneficiary of a life insurance policy would negate a substantial reason for the insured's purchase of the policy—the peace of mind and security which it provides in the event of loss.'" *Id.* at 347 (quoting *Roach*, 769 P.2d at 162). In making its ruling, the Wisconsin court observed that "[o]ur recognition of a beneficiary's bad faith cause of action is consistent with authorities from other jurisdictions and with insurance treatises that have specifically addressed the issue." *Plautz*, 525 N.W.2d at 347 n. 6 (citing, *inter alia*, 16A Appleman's Insurance Law and Practice § 8878 (1993 Supp.)) ("The insurer's duty of good faith and fair dealing also extends to third parties ... such as beneficiaries of life insurance policies.").

■ We recently reviewed the status of first- and third-party bad faith recovery in *Loudin v. National Liability & Fire Insurance Co.*, 228 W.Va. 34, 716 S.E.2d 696 (2011). Observing that a first-party bad faith claim can still be brought under common or statutory law, we noted that the judicially-implied third-party bad faith statutory claim[15] was expressly abolished by the Legislature. 228 W.Va. at 38–39, 716 S.E.2d at 700–01; W.Va.Code § 33–11–4a. Because

15. *See Jenkins v. J.C. Penney Cas. Ins. Co.*, 167 W.Va. 597, 280 S.E.2d 252 (1981).

the claim involved in *Loudin*[16] presented characteristics of both a first- and a third-party bad faith claim, we reviewed the definitional parameters for such actions. Elevating the definition first adopted in *Gaughan*, we held in syllabus point two of *Loudin* that "[a] first-party bad faith action is one wherein the insured sues his/her own insurer for failing to use good faith in settling a claim filed by the insured." 228 W.Va. at 35, 716 S.E.2d at 697. We affirmed the accepted definition of a third-party action as one brought against an insurer by a plaintiff who has already prevailed in a separate action against an insured tortfeasor. *Id.* at 38, 716 S.E.2d at 700. Neither one of those definitions squarely fit the situation presented by the facts of *Loudin.* As a result, the Court undertook an analysis of the principles which underlie both insurance in general and bad faith actions in particular. *See id.* at 40–41, 716 S.E.2d at 702–03.

Of import to this Court in *Loudin* was the recognition that policyholders deserve to get the benefit of their contractual bargain and that this benefit should obtain without having to undergo costly and time-consuming litigation. 228 W.Va. at 40, 716 S.E.2d at 702. And when insurers choose to wrongfully deny coverage or pay benefits to premium-paying insureds, this state has a firm public policy of holding them accountable. *See id.* at 40–41, 716 S.E.2d at 702–03. In view of these principles as well as the unfairness that would result if the named policyholder was determined not to be owed a duty of good faith and fair dealing, we held that the policyholder qualified as a first-party claimant in any subsequent bad faith action arising from the policyholder's claim against a non-named insured. *See Loudin,* 228 W.Va. at 41, 716 S.E.2d at 703.

The trial court correctly recognized that the claim Mr. Goff had filed did not fit into either of the definitions this Court has adopted for purposes of distinguishing first-party from third-party bad faith actions. By ending the inquiry there, however, the trial court failed to fully consider the issue of whether Appellant may still pursue his claim. In examining this issue of how to classify bad faith actions asserted by life insurance beneficiaries, a federal court reasoned as follows:

Plaintiff argues that the contract at issue here is a third-party contract because the beneficiaries are third-party beneficiaries.... In *Broadwater,* the Utah Supreme Court stated: "Third-party beneficiaries are those 'recognized as having enforceable rights created in them by a contract which they are not parties [to and] for which they give no consideration.'"

Based on the fact that she is a third-party beneficiary, Plaintiff argues that the contract is a third-party contract. However, Plaintiff ignores the distinction between first-party and third-party contracts created in the statue [sic] and defined by the courts. *The fact that Plaintiff may be a third-party beneficiary does not somehow transform the contract from a first-party to a third-party contract.*

... Defendant has provided authority that life insurance contracts constitute first-party contracts.

... [T]he Court finds that the contract at issue here is a first-party insurance contract. This is not a situation where the insurer contracts to defend the insured against claims made by third parties against the insured and to pay any resulting liability.

*Fuller v. Nationwide Insurance Co.,* 2009 WL 723245 (D.Utah 2009) (emphasis supplied); *see also Hanneman v. Guarantee Trust Life Ins. Co.,* 2010 WL 3087509 (N.D.Fla.2010) (treating claim of bad faith brought by life insurance beneficiary as first-party bad faith claim).

We find the logic employed in *Fuller* to be eminently reasonable. Just because the person who is asserting the claim is a third party with regard to the subject insurance policy, that fact alone does not alter the nature of the contract itself. The contract upon which Mr. Goff seeks to assert that Penn Mutual violated its statutory duty of

---

**16.** The bad faith claim at issue arose from a previously-asserted claim by a policyholder against his own insurer for the negligent acts of a non-named insured. The non-named insured was an individual who was operating one of the insured's vehicles with the insured's permission.

good faith and fair dealing is clearly a first-party contract. In procuring the life insurance contract at issue, Betty Toler sought to provide financial security to Mr. Goff upon her demise as well as to gain the peace of mind that such a gift provides the donor. And while we take no position as to whether Appellant can succeed on his statutory bad faith claim,[17] he deserves the right to pursue that claim. Accordingly, we hold that upon the death of the insured, a primary beneficiary of a life insurance policy has standing to bring a statutory bad faith claim against the insurer pursuant to West Virginia Code § 33–11–4(9). In bringing such a suit, the beneficiary stands in the shoes of the insured in asserting a first-party type of statutory bad faith action. Absent this type of putative recovery, insurance companies could arguably escape accountability with regard to the payment of life insurance benefits. *See Plautz*, 525 N.W.2d at 346.

Based on the foregoing, the decision of the Circuit Court of Harrison County is reversed and this matter is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

---

**17.** Until Penn Mutual obtained the necessary medical authorization from Ms. Toler Ooten, it would appear that the clock with regard to the timely payout of benefits would not have started to run. We note, however, that this observation is based upon an assumption that the insurer fully and promptly pursued its options with regard to obtaining the authorization.